WILLIAMS, Appellee,

v.

PARKER HANNIFIN CORPORATION, Appellant, et al.

[Cite as *Williams v. Parker Hannifin Corp.*, 188 Ohio App.3d 715, 2010-Ohio-1719.]

Court of Appeals of Ohio,
Twelfth District, Preble County.

No. CA2009–09–025.

Decided April 19, 2010.

716

Skilken, Lowe & Dankof, L.L.C., and Thomas E. Skilken, for appellee.

Beirne & Wirthlin Co., L.P.A., and Michael J. Schutte, for appellant.

BRESSLER, Presiding Judge.

{¶ 1} Defendant-appellant, Parker Hannifin Corporation, appeals the decision of the Preble County Court of Common Pleas finding plaintiff-appellee, Anthony Williams, eligible to participate in the workers' compensation system for a work-related injury. We affirm the decision of the trial court.

{¶ 2} Williams began working as a second-shift machine operator for Parker Hannifin in November 1997 and was employed there until 2001. In June 1999,

Williams was helping his father move a steel farm compressor and injured his back in the process. Williams applied hot and cold compresses to his back and took various medications to combat the pain that resulted from his injury, but did not miss any work as a result. However, over time, the pain worsened until Williams was forced to have surgery in April 2000. After the surgery, Williams's pain decreased, and he returned to work on May 15, 2000, a few weeks earlier than his expected return date.

{¶ 3} After Williams spent time working light duty, he eventually returned to his regular job as a machinist, where part of his duties included fitting the machines with drill bits. On August 1, 2000, Williams went to the tool cage to change out parts for his machine and noticed a co-worker pinned under a heavy tool cabinet. When Williams tried to move the cabinet, he "felt something pop" in his back, and he was ultimately unsuccessful at moving the large steel cabinet until other co-workers came and eventually slid the cabinet back into place. Williams returned to work after taking an over-the-counter pain medication and finished his shift at 11:00 p.m.

{¶ 4} Williams continued having back pain all night and went to an Urgent Care the next morning, where he received pain medication and muscle relaxers, as well as prescriptions to continue the pain medications. Williams then returned to the doctor who performed the first back surgery. Williams continued to receive medical attention for his worsening back pain. When Williams developed sharp pains in his leg, he ultimately stopped working and underwent a second back surgery.

{¶ 5} At various times after his August 1 accident, Williams reported other incidents that may have affected his original back injury. Specifically, Williams told his family physician, Dr. Robert Kominiarek, that soon after the accident he felt back spasms after mopping and cleaning at work. Dr. Kominiarek testified during a taped deposition that his medical records indicated that Williams thought that the mopping and cleaning had caused him to strain something in his back. As described by Dr. Kominiarek, mopping is one of the most dangerous positions in which to place the back because of the unnatural twisting and bending required by the maneuver.

{¶ 6} Williams also went to see Dr. Kominiarek after falling on ice in December 2000. According to Williams, he began slipping on icy stairs but was unable to steady himself because his leg gave out, and he fell. According to Dr. Kominiarek's records, Williams reported twisting his back during his fall.

{¶ 7} Williams also visited Dr. Kominiarek in March 2001 because he developed sharp pains in his leg after clearing his throat and coughing. Though Williams went to work after the coughing episode and finished his shift, his pain progres-

sively worsened through the night until his leg began to drag and he could no longer walk properly.

{¶ 8} After Williams stopped working, he filed a motion with the Industrial Commission of Ohio asking to amend his workers' compensation claim to include an additional condition of "recurrent herniated disc." When the commission denied his motion, Williams appealed the decision to the Preble County Court of Common Pleas and the matter was heard during a two-day trial. The jury returned a verdict in favor of Williams, thereby entitling him to participate in the workers' compensation system for the additional condition. Parker Hannifin now appeals the decision, raising the following assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} "The trial court erred to the prejudice of defendant–appellant in summarily overruling all of defendant's objections raised in the experts' trial testimony depositions."

■ {¶ 11} In its first assignment of error, Parker Hannifin asserts that the trial court erred by not sustaining several of its objections to questions asked of Williams's expert witnesses. This argument lacks merit.

{¶ 12} Before the trial began, the parties videotaped the depositions of three doctors and throughout the course of each, raised multiple objections. Instead of stating the specific basis for each objection or any explanation, the parties simply objected and moved to strike the answers. The parties agreed to play the videotaped depositions at trial in lieu of live testimony from the doctors and asked the trial court to rule on the general objections raised before the jury viewed the depositions. The trial court summarily overruled the parties' objections and gave the jury an instruction to disregard each raised objection before it played the videotapes unedited.

{¶ 13} Parker Hannifin now argues that the trial court erred in summarily overruling each of its objections, and instead submits that the trial court was trying to avoid the "logistical difficulties associated with a videotaped deposition," such as editing out improper testimony. Instead of specifically addressing the merits of each objection it raised during the depositions, Parker Hannifin now challenges the trial court's decision to overrule objections it raised to expert testimony based on hypothetical questions.

■ {¶ 14} Before addressing the merits of Parker Hannifin's challenge to the hypothetical questions, we first note that Parker Hannifin failed to state the basis for each objection it raised during the testimony of Drs. West and Kominiarek. After Williams posed the hypothetical questions, Parker Hannifin simply stated, "objection" and then "move to strike" after the witness answered. These general

objections fail to conform to Evid.R. 103(A)(1)'s requirement that a party state a "specific ground of objection if the specific ground was not apparent from the context." Specific to the "effect of errors and irregularities in depositions," Civ.R. 32(D)(3)(a) expressly states that waiver occurs should a party fail to state an objection when the ground for the objection "might have been obviated or removed if presented at that time."

{¶ 15} "The purposes of the contemporaneous objection rule include allowing the questioner to correct his or her mistake or inadvertence, as well as allowing the trial court to avoid error by taking corrective action." *Ward v. Herr Foods, Inc.* (Aug. 16, 1990), Vinton App. No. 456, 1990 WL 118868, *15. The case at bar enforces the purpose for requiring a specific ground for objection. The hypotheticals asked during the depositions of both doctors were somewhat lengthy and could theoretically offer multiple reasons for objection. We cannot say that the specific grounds for Parker Hannifin's objections were apparent from the context of the questions when one ambiguous "objection" was raised at the end of the hypothetical that asked the doctors to assume several transcript pages worth of facts and information.

{¶ 16} While Parker Hannifin now particularly asserts that it objected to the hypotheticals because they included facts that were not admitted into evidence, incorrect facts, and otherwise undisclosed facts, there was no way for the trial court to specifically review those hypotheticals without knowing the bases for Parker Hannifin's objections or in what way it might address its concerns. Similarly, at the time of the deposition, Parker Hannifin's all-encompassing objection provided no way for Williams to understand why Parker Hannifin was objecting, thereby eliminating any chance he may have had in rephrasing the question to cure any error that might have existed.

{¶ 17} While the general objections failed to state the required grounds as discussed above, we choose not to sua sponte deem the objections waived for purposes of appeal. However, we will review the trial court's decision to overrule the general objections and admit the expert testimony, mindful that the trial court was asked to rule upon Parker Hannifin's indefinite objections but was not given an appropriate legal rationale for sustaining them.

{¶ 18} Evid.R. 703 addresses the permitted bases for expert opinion testimony and is supplemented by Evid.R. 705, which states that "the expert may testify in terms of opinion or inference and give the expert's reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise." However, "it is well established that an expert can base an opinion only on facts presented in a hypothetical question if evidence tending to establish those facts is admitted into evidence." *Sowers v. Middletown Hosp.* (1993), 89 Ohio App.3d 572, 586, 626 N.E.2d 968.

{¶ 19} "Where there is conflict in the evidence concerning the existence of a fact which is material to the expert's forming an opinion, counsel propounding the hypothetical question is entitled to include as an assumed fact his version of the evidence on the disputed fact. It is then for the trier of the facts to resolve the factual dispute and, depending upon its findings, to determine what weight it will give to the opinion-answer." *Mayhorn v. Pavey* (1982), 8 Ohio App.3d 189, 191–192, 8 OBR 258, 456 N.E.2d 1222.

{¶ 20} "A trial court's decision on whether to admit or exclude expert testimony will not be reversed absent an abuse of discretion." *Herzner v. Fischer Attached Homes,* Clermont App. No. CA2007–08–090, 2008-Ohio-2261, 2008 WL 2004473, ¶ 7. More than mere error of judgment, an abuse of discretion requires that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 21} The trial court reviewed the depositions and found that the hypothetical questions posed to both doctors were proper. The court did not abuse its discretion in so deciding. Instead, the record indicates that contrary to Parker Hannifin's contention, the doctors were asked to base their answers to the hypotheticals on personal knowledge and facts otherwise entered into the record.

{¶ 22} During the deposition of Dr. Scott West, Williams stated his intention to ask a hypothetical question, and then had Dr. West review four exhibits relating to the August 1 injury in Parker Hannifin's tool crib. Williams then stated, "Now, I'd like you to further assume, in addition to the contents of those records * * *" and continued his hypothetical with facts such as Williams's earlier surgery in 2000, his return to work, the pain medication he received, and his lack of pain until the August 1 injury. Dr. West also reviewed Williams's Exhibits 17–40, 45–47, and 49–50 before he answered the hypothetical and provided his opinion that "based on his imaging studies, I certainly feel that he did suffer a recurrent disc herniation at the L4–5 level."

{¶ 23} Dr. West went on to testify that the August 1 injury aggravated Williams's preexisting low-back problems. In support of his opinion, Dr. West cited Williams's Exhibit 50 [1] that contained a chart of medications Williams took

---

1. As discussed under Parker Hannifin's third assignment of error, Williams's Exhibit 50 contained several inaccurate amounts of prescription medication taken by Williams in the months before and after the August 1 injury. However, Dr. West testified that the determinative factor gleaned from exhibit 50 was that in the two months preceding the accident, Williams was on no medication (a fact not in dispute) whereas Williams was prescribed several different medications in the months after trying to move the tool cabinet. While the specific number of prescribed pills may have been erroneously listed on exhibit 50, the trial court admitted Williams's Exhibit 54 to correct those miscalculations contained in exhibit 50

before and after the August 1 injury, West's firsthand knowledge of Williams's medical history, as well as the incident report Williams filled out regarding his injury at work. Therefore, this hypothetical was specifically based on Dr. West's firsthand knowledge of Williams's injury and facts otherwise contained in the exhibits shown to Dr. West before he stated his opinion.

{¶ 24} Williams also posed a hypothetical to Dr. Robert Kominiarek, his family physician, during the deposition later showed to the jury. Before Williams posed the question to Dr. Kominiarek, counsel stated, "I'd like you to begin by assuming all the facts that you have testified here to today, and I'd like to ask you to assume the contents of the exhibits that are contained in the binder from Plaintiff's Exhibit 1 through Plaintiff's Exhibit 47, and you were just shown Exhibit, Plaintiff's Exhibit 49, which we'll be adding to the book here."

{¶ 25} The parties then went off the record to allow Dr. Kominiarek time to review the exhibits. Williams then posed the hypothetical question and included facts specific to the August 1 injury. In response, Dr. Kominiarek responded that in his opinion, Williams "suffered a recurrent herniated disc at L4–L5 that was caused by trying to lift a heavy object, which was this drill cabinet." Dr. Kominiarek then stated that he formed his opinion based on his firsthand knowledge of "the cumulative visits of [Williams] with respect to his low back pain and the progression of it from the time that he had his initial herniated disc through the surgery, recurrent injury, recurrent herniated disc." Therefore, this hypothetical was also specifically based on Dr. Kominiarek's firsthand knowledge of Williams's injury and facts otherwise contained in the exhibits shown him before he stated his opinion.

{¶ 26} While Parker Hannifin now claims that the doctors' opinions could not be properly based on a hypothetical that did not list a complete set of facts, included misstated facts, and contained no evidentiary support, the issues raised by Parker Hannifin are those that speak to the weight of the evidence, and not to its admissibility. Instead, by way of deliberations, the jury would resolve any factual dispute and, depending upon its findings, determine what weight to give the opinion-answers. Based upon the jury's verdict, it resolved the factual dispute in favor of Williams and found the opinion testimony of Drs. West and Kominiarek credible. As the issue was properly left within the province of the jury, the trial court did not abuse its discretion in overruling Parker Hannifin's objections and allowing the testimony to be heard in its entirety. Parker Hannifin's first assignment of error is overruled.

{¶ 27} Assignment of Error No. 2:

---

and to allow the jury to properly weigh both exhibit 50 and Dr. West's testimony based on the erroneous exhibit.

{¶ 28} "The trial court erred to the prejudice of appellant in denying defendant's motion for directed verdict at the close of plaintiff's evidence."

■ {¶ 29} In its second assignment of error, Parker Hannifin asserts that the trial court should have granted its motion for a directed verdict. There is no merit to this argument.

■ {¶ 30} According to Civ.R. 50(A)(4), "when a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." An appellate court reviews the trial court's decision regarding a motion for directed verdict de novo. *Scanlon v. Pfaller*, Butler App. No. CA2005–05–110, 2006-Ohio-2022, 2006 WL 1064051.

■ {¶ 31} "In order to establish a right to workers' compensation benefits for harm or death arising from an accidental injury, it is necessary for the claimant to show by a preponderance of the evidence that a direct and proximate causal relationship existed between his injury and the harm or death. * * * 'Proximate cause' is a happening or event which as a natural and continuous sequence produces an injury without which the result would not have occurred." *Randall v. Mihm* (1992), 84 Ohio App.3d 402, 406, 616 N.E.2d 1171.

{¶ 32} Essentially, Parker Hannifin argues that the trial court should have granted its motion for a directed verdict because Williams was unable to prove that a proximate cause of his recurrent herniated disc was moving the tool cabinet after it had fallen on his co-worker. Instead, Parker Hannifin quotes testimony from Drs. West and Kominiarek wherein they stated that Williams's first surgery, his coughing episode in March 2001, the slip and fall on ice in December 2000, or the dangerous mopping movements performed shortly after the August 1 accident could have caused the disc to become herniated.

{¶ 33} However, the trial court ultimately instructed the jury that "there may be more than one proximate cause of injury. When workplace activities, conditions and risks combine with other causes to directly or proximately produce the injury, each is a proximate cause." While it is true that the doctors agreed with Parker Hannifin that Williams's surgery, coughing episode, fall on the ice, and mopping could have caused his worsening back pain, the testimony from both doctors establishes their belief that the August 1 injury was a proximate cause of Williams's recurrent herniated disc.

{¶ 34} As previously mentioned, after Williams posed the hypothetical question to Dr. Kominiarek, he asked Kominiarek if he had an opinion to a reasonable

degree of medical certainly whether Williams had suffered a recurrent herniated disc and whether that herniated disc was caused by trying to move the cabinet. Dr. Kominiarek then responded that he did have an opinion and that Williams "suffered a recurrent herniated disc at L4–L5 that was caused by trying to lift a heavy object, which was this drill cabinet." Dr. Kominiarek then went on to explain his opinion and specifically stated that "in the act of trying to lift or push this drill bit cabinet, [Williams] was actually performing something that someone with a destabilized spine should not be really doing, and it certainly is a cause of herniated lumber disc, or a recurrent herniation of lumbar disc, and is a cause of his further back problems and the recurrent herniated disc."

{¶ 35} During Dr. West's testimony, he too offered the opinion that Williams's attempt to move the cabinet was a proximate cause of his herniated disc. After Williams asked Dr. West whether his "injury at work on August 1st, 2000 aggravated his preexisting low back problems and herniated disc at L4–5," Dr. West responded, "I certainly feel that he did aggravate that preexisting condition. * * * given the incident report that you provided, the work injury, I have to feel that he had an injury there on August 1st."

{¶ 36} We also note that Parker Hannifin introduced testimony from its own medical expert that the August 1 accident was not a proximate cause of Williams's herniated disc. Therefore, the differing versions of causation offered by Williams's expert testimony and that of Parker Hannifin presented a clear issue of fact upon which reasonable minds could have disagreed.

{¶ 37} Based on the legal principle that questions of proximate cause relating to the compensability of injuries in the area of workers' compensation are within the province of the trier of fact, and construing the evidence most strongly in favor of Williams, we are unable to say that reasonable minds could come to but one conclusion based on the evidence or that the conclusion would be against Williams. Having found that a directed verdict was improper and that the trial court did not err in denying Parker Hannifin's motion, its second assignment of error is overruled.

{¶ 38} Assignment of Error No. 3

{¶ 39} "The trial court erred to the prejudice of appellant in admitting into evidence plaintiff's demonstrative Exhibit 54."

{¶ 40} In its third assignment of error, Parker Hannifin asserts that the trial court erred in admitting one of Williams's exhibits. This argument lacks merit.

{¶ 41} Parker Hannifin challenges the trial court's decision to admit Williams's Exhibit 54, and now asserts that the demonstrative exhibit was not

admissible. "Admission of demonstrative evidence is generally within the sound discretion of the trial court, in light of all the circumstances in the case. Only when the trial court has abused its discretion in the admission or rejection of such evidence will this court reverse the trial court's decision. Moreover, Evid.R. 403(A) states that relevant evidence is inadmissible '* * * if its probative value is substantially outweighed by the danger of unfair prejudice * * *.'" (Citation omitted.) *Tritt v. Judd's Moving & Storage, Inc.* (1990), 62 Ohio App.3d 206, 218, 574 N.E.2d 1178.

{¶ 42} Williams's Exhibit 54, a chart approximately seven feet long and two feet wide, lists a month-by-month summary of Williams's prescriptions and the amount of work he missed within the months preceding and following his August 1 injury. Parker Hannifin asserts that the trial court abused its discretion by admitting the exhibit into evidence because Exhibit 54 is demonstrative, no witnesses were asked questions regarding the exhibit, and it is duplicative of other information offered into evidence. Parker Hannifin also asserts that the exhibit's sheer size was likely to prejudice the jury and cause it to place an inordinate amount of weight on the evidence contained therein.

{¶ 43} However, the trial court admitted Exhibit 54 because it corrected several miscalculations listed in Exhibit 50 regarding the amount of medications Williams took before and after the August 1 accident. Williams admits that Exhibit 50, a much smaller chart with similar information to Exhibit 54, contains several errors in the number of prescription pills Williams took each day. While the doctors may not have been directly questioned on Exhibit 54, Williams relied on Exhibit 50 when he asked Dr. West to state his opinion whether the August 1 accident was a proximate cause of Williams's continuing back pain. Dr. West based his opinion in part on Williams's medication usage as stated in the charts, specific to the lack of medication in the two months preceding the accident. In order to correct the errors in Exhibit 50, the court admitted Exhibit 54, which contained the correct amount of medication Williams took.

{¶ 44} While Exhibit 54 is somewhat duplicative because it mimics the information contained in Exhibit 50, the trial court specifically recognized that Exhibits 50 and 54 contain different amounts and figures. Although the exhibit's size may be larger than a typical exhibit, nothing on the record indicates that its size prejudiced the jury, and Parker Hannifin fails to cite any prejudice it suffered other than its mere assumption that the jury gave more consideration to the chart because of its size. Instead, the trial court noted that its purpose in admitting Exhibit 54 was to correct errors contained in Exhibit 50 because Exhibit "50 is the one that's incorrect that pertains to the Defendant's defense that the doctor was using improper information when he, he offered his opinions."

{¶ 45} If anything, the large exhibit would highlight the fact that Williams's witness relied on incorrect evidence when forming his opinion. This reliance on incorrect information would not prejudice the jury against Parker Hannifin, but rather allow the jury to question the weight of Dr. West's testimony. The trial court thereby concluded that the evidence was admissible and that Parker Hannifin was free to argue what weight the jury should give the exhibits.

{¶ 46} Regarding the exhibit's probative value compared to any prejudice it may have caused, Exhibit 54 corrected several errors found in Exhibit 50, and otherwise highlighted the inconsistencies between the two exhibits. It also set forth the proposition that Williams was medication-free before the August 1 accident and then took several medications after it. Therefore, the exhibit had probative value in that it tended to prove Williams's contention that moving the tool cabinet was a proximate cause of his recurrent herniated disc. Given that the jury was free to assign whatever weight it deemed proper to the exhibit, and based on all of the circumstances in the case, the trial court's decision to admit Exhibit 54 was not arbitrary, unreasonable, or capricious. Having found no abuse of discretion, Parker Hannifin's third assignment of error is overruled.

{¶ 47} The judgment is affirmed.

Judgment affirmed.

POWELL and HENDRICKSON, JJ., concur.