[Cite as *Ruple v. Midwest Equip. Co.*, 2011-Ohio-2923.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95726**

## JOHN RUPLE, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## MIDWEST EQUIPMENT COMPANY, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-696983

**BEFORE:** Sweeney, P.J., Keough, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**     June 16, 2011

**ATTORNEYS FOR APPELLANTS**

Matthew E. Parkins, Esq.
Singerman, Mills, Desberg & Kauntz
3333 Richmond Road, Suite 370
Beachwood, Ohio 44122

Michael R. Houston, Esq.
Houston Legal Counsel, Inc., L.P.A.
2450 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEES**

Charles V. Longo, Esq.
Matthew D. Greenwell, Esq.
Charles V. Longo Co., L.P.A.
25550 Chagrin Blvd., Suite 320
Beachwood, Ohio 44122

JAMES J. SWEENEY, P.J.:

{¶ 1}  Plaintiff-appellants, John Ruple ("Ruple") and Chagrin Valley Steel Erectors, Inc. ("Chagrin Valley"), appeal from the trial court's journal entry that granted defendants-appellees' Midwest Equipment Company ("Midwest") and Joseph Manos ("Manos"), motion for summary judgment and that also partially granted the appellees' motion to strike Ruple's affidavit. For the reasons that follow, we affirm.

{¶ 2} Appellants' first three assignments of error concern the trial court's summary judgment order and will be addressed together. The last assignment of error challenges the court's order that struck the portions of Ruple's affidavit that were inconsistent with his deposition testimony.

{¶ 3} Appellants' complaint asserted claims against appellees for breach of contract, promissory estoppel, and intentional or negligent misrepresentation. In the last assignment of error, appellants contend that:

{¶ 4} "IV. The trial court erred in striking the supplemental affidavit of John Ruple and failing to consider it as evidence in its determination of the Motion for Summary Judgment of Defendants."

{¶ 5} We review a court's denial of a motion to strike for an abuse of discretion. *Abernathy v. Abernathy*, Cuyahoga App. No. 81675, 2003-Ohio-1528. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (internal citations omitted).

{¶ 6} Ruple was deposed on April 29, 2010. On June 30, 2010 Ruple submitted an affidavit in support of his brief in opposition to appellees' motion for summary judgment. Appellees moved to strike Ruple's affidavit arguing that it conflicted with his deposition testimony. Specifically, appellees referenced the portion of Ruple's deposition where he acknowledged

that the parties were negotiating the terms of Ruple's purchase of Midwest stock and that the stock purchase was never finalized. The court ultimately granted the motion to strike in part and ordered "where the affidavit is inconsistent with the prior testimony, and no explanation is offered for the inconsistency, the court will disregard the inconsistent portion of the affidavit." The motion to strike was otherwise denied. The court found that Ruple's affidavit testimony was admissible to the extent it supplemented his prior testimony.

{¶ 7} The trial court did not abuse its discretion in rendering its decision. The Ohio Supreme Court has held "that an affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, paragraph three of the syllabus.

{¶ 8} Therefore, where Ruple's affidavit contradicts his deposition testimony without explanation, the court appropriately struck those portions of Ruple's affidavit that contradict his prior testimony without explanation. To the extent Ruple contends that his affidavit contained supplemental testimony, the court did not strike those portions of it.

{¶ 9} The fourth assignment of error is overruled.

{¶ 10} The first three assignments of error are stated as follows:

{¶ 11} "I.  The trial court erred in granting summary judgment as to the existence of a contract between Ruple and Midwest."

{¶ 12} "II.  The trial court erred in granting summary judgment as to the claims of promissory estoppel of Ruple and CVSE against Midwest and Manos."

{¶ 13} "III.  Summary judgment should not have been granted on the intentional misrepresentation claim as the facts which form the basis of this claim do not also form the basis of the breach of contract claim."

{¶ 14} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 15} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively

demonstrate that the nonmovant has no evidence to support his claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.

{¶ 16} An appellate court reviews a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

{¶ 17} The facts set forth below are construed under the applicable standard.

A. Breach of Contract

{¶ 18} To succeed on a breach of contract claim, a party must prove the existence of a contract, that party's performance under the contract, the opposing party's breach, and resulting damage. See *On Line Logistics, Inc. v. Amerisource Corp.*, Cuyahoga App. No. 82056, 2003-Ohio-5381, at ¶39. To prove the existence of a contract, a plaintiff must show that both parties consented to the terms of the contract, that there was a "meeting of the minds" of both parties, and that the terms of the contract are definite and certain. *Nilavar v. Osborn* (2000), 137 Ohio App.3d 469, 738 N.E.2d 1271, citing *McSweeney v. Jackson* (1996), 117 Ohio App.3d 623, 631, 691 N.E.2d 303.

{¶ 19} "'A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract. They must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.'" *Rulli v. Fan Co.* (1997), 79 Ohio St.3d 374, 376, 683 N.E.2d 337, quoting, 1 Corbin on Contracts (Rev.Ed.1993) 525, Section 4.1.

{¶ 20} Appellants alleged that they entered an oral contract with appellees whereby Ruple would become an employee of Midwest while a stock purchase agreement was being finalized. Appellants alleged appellees breached an alleged provision of this contract that provided that Ruple would earn salary and benefits equivalent to Manos's business partners in Midwest.

{¶ 21} Ruple testified that he was never made an employee of Midwest but instead worked for Commercial Crane & Rigging, Inc. ("Commercial Crane"); a company that Manos had acquired at Midwest's expense. Ruple did not contribute any capital to the purchase of Commercial Crane. Ruple was employed at Commercial Crane from October of 2005 until October of

2006. Ruple received compensation during his employment at Commercial Crane until he resigned. According to Ruple's own evidence, he was to receive a salary of $100,000.00 plus benefits while employed with Commercial Crane.

{¶ 22} During his deposition, Ruple testified that his purchase of Midwest stock was never finalized. However, Ruple said he began winding down the business of Chargin Valley in 2005 in anticipation of a merger with Midwest. But in his subsequent affidavit, Ruple averred that he could not shut down Chagrin Valley because it was being utilized by Commercial Crane as a subcontractor. He could not provide any amount of damage suffered by Chagrin Valley during this time period but said that he stopped actively pursuing business for Chagrin Valley when he accepted employment with Commercial Crane. The undisputed evidence illustrates that Chagrin Valley's business continued to grow during the time Ruple was employed with Commercial Crane.

{¶ 23} By letter dated April 19, 2006, Manos informed Ruple that he wished to "table the negotiations" on Ruple's purchase of Midwest stock and "removed" all previous preliminary agreements. The correspondence reflected that Ruple could continue as President of Commercial Crane while at the same time continue the operations of his own separate company, Chagrin Valley.

{¶ 24} After Ruple tendered his resignation from employment with Commercial Crane, Manos solicited terms of separation by letter dated September 13, 2006. In response, Ruple[1] transmitted, by facsimile, a breakdown of unresolved matters. This document was titled "Severance Package." Therein, Ruple sets forth his "quoted salary" as $100,000.00 and identified the amount owed as being "$16,370.96." The document set forth various other line items and sought a total amount of $53,170.96, including payment for specified equipment assets. Ruple confirmed that Manos thereafter issued him a check in the amount of $50,000.00 that indicated it was "full restitution." Ruple cashed the check.

{¶ 25} In opposition to appellees' motion for summary judgment, appellants maintained that there were genuine issues of material fact concerning the fact as to the breach of contract. Specifically, appellants maintained that Ruple had not received vacation pay and that appellants did not receive "compensation for the use of its equipment not listed on the Severance Package list."

{¶ 26} Even construing the evidence in a light most favorable to appellants, it is insufficient to sustain a breach of contract claim on either point. Ruple offers his affidavit testimony in support of his claim that he did

---

[1] Although the correspondence is signed "John," Ruple stated during his deposition that his wife actually prepared and sent the separation terms to Manos on his behalf.

not receive vacation pay or additional monies for the use of equipment. However, the documentary evidence establishes that Ruple received salary and benefits equivalent to Manos's business partners in Midwest, and there is no evidence that there was ever an agreement concerning the rental of the unidentified equipment. Further, Ruple himself identified the outstanding issues in the severance package document he sent to Manos. In response, Manos issued him a check designated as full restitution, which Ruple cashed without reservation. Even assuming the existence of a contract on the terms alleged by appellants, they have not presented evidence that would create a genuine issue of material fact concerning the breach thereof. The trial court properly entered summary judgment in favor of Appellees on this claim.

B. Promissory Estoppel

{¶ 27} "[I]n order to state a claim for promissory estoppel, the plaintiff 'must establish the following elements: 1) a clear and unambiguous promise, 2) reliance on the promise, 3) that the reliance is reasonable and foreseeable, and 4) that he was injured by his reliance.'" *Stern v. Shainker*, Cuyahoga App. No. 92301, 2009-Ohio-2731, ¶9.

{¶ 28} The crux of this claim is that appellees promised Ruple he could purchase stock in Midwest. While this may establish the first element of this claim, the evidence is lacking on the remaining elements. Ruple repeatedly acknowledged during his deposition that the parties were in the

process of negotiating his contemplated purchase of the Midwest stock. The documents support the preliminary nature of these dealings, including the correspondence sent June 28, 2005 describing Manos's "broad stroke view on an agreement," and the "stock purchase agreement" dated October 21, 2005, which was a one page "letter of agreement" to "outline and serve as a preliminary agreement" between Midwest and Ruple. The evidence adequately reflects efforts being made by the parties to enter a stock purchase agreement. However, one was never finalized and the contents of the documents indicate a process of negotiations.

{¶ 29} Although Ruple maintained he accepted employment with Commercial Crane in reliance on the promise of stock ownership in Midwest; the evidence does not establish that his reliance was reasonable or detrimental. Ruple was compensated by Commercial Crane during his employment and continued to operate Chagrin Valley. Chagrin Valley's revenues increased during this time period. In opposition to summary judgment, appellants contend they were damaged because they stopped pursuing lucrative contracts with Chagrin Valley's regular customers. Any alleged damages that Ruple asserted in his affidavit were suffered by Chagrin Valley as a consequence of his employment with Commercial Crane are speculative at best and do not create a genuine issue of material fact

necessary to sustain this claim. The trial court properly granted summary judgment to appellees on the promissory estoppel claim.

C. <u>Intentional Misrepresentation Claim</u>

{¶ 30} Appellants' complaint alleged that "Manos intentionally and/or negligently misrepresented Midwest's and Midwest's owners' interest in committing to allow Ruple to purchase an interest in Midwest for $250,000.00."

{¶ 31} Intentional misrepresentation requires proof of the following:

{¶ 32} "(a) a representation * * *, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, N.E.2d 49 (citations omitted).

{¶ 33} In order to state a claim of negligent misrepresentation, a plaintiff must produce evidence of the following elements:

{¶ 34} "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their

justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." 3 Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1), applied by the Supreme Court of Ohio in *Gutter v. Dow Jones, Inc.* (1986), 22 Ohio St.3d 286, 22 OBR 457, 490 N.E.2d 898. Justifiable reliance is a prima facie element of negligent misrepresentation. *Sindel v. Toledo Edison Co.* (1993), 87 Ohio App.3d 525, 531, 622 N.E.2d 706.

{¶ 35} There is no evidence that Manos either negligently or intentionally misrepresented the Midwest owner's interest in having Ruple purchase Midwest stock. The evidence reflects that the parties engaged in acts reflecting that intent, including hiring Ruple to operate Commercial Crane, appointing him as director of Midwest, and approving the future sale of stock to Ruple at a price to be determined. The parties negotiated towards effecting this purpose but the terms of the sale were never finalized. After a period of operations, appellees tabled the negotiations but indicated that there was a possibility of discussing the sale at a future date. Appellees wanted Ruple to continue as president of Commercial Crane while he continued to operate his own company Chagrin Valley. Ruple opted to resign his employment with Commercial Crane and focused his efforts on Chagrin Valley. The facts do not create a genuine issue of material fact on this claim

and the trial court did not err by entering judgment in favor of appellees on this claim.

Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

JAMES J. SWEENEY, PRESIDING JUDGE

KATHLEEN A. KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR