[Cite as *Hyams v. Cleveland Clinic Found.*, 2012-Ohio-3945.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No.   97439

---

# JARED HYAMS, ET AL.

### PLAINTIFFS-APPELLEES

vs.

# CLEVELAND CLINIC FOUNDATION, ET AL.

### DEFENDANTS-APPELLANTS

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-636016

**BEFORE:**     Boyle, P.J., Cooney, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**     August 30, 2012

**ATTORNEYS FOR APPELLANTS**

Anna M. Carulas
Ingrid Kinkopf-Zajac
Douglas G. Leak
Roetzel & Andress, LPA
One Cleveland Center, 9th Floor
1375 East Ninth Street
Cleveland, Ohio    44114

**ATTORNEYS FOR APPELLEES**

Christopher M. Mellino
Thomas D. Robenalt
Allen C. Tittle
Mellino Robenalt LLC
19704 Center Ridge Road
Rocky River, Ohio 44116

MARY J. BOYLE, P.J.:

**{¶1}** Defendants-appellants, the Cleveland Clinic Foundation and Barbara Wechsler (collectively "the Clinic"), appeal a jury verdict for plaintiffs-appellees, Jared Hyams and his parents, Douglas and Linda Hyams (collectively "the Hyamses"), on their medical malpractice action. The gravamen of their appeal is that the Hyamses' expert witness, Dr. Robert Granacher, was not competent to testify at trial, and therefore the trial court should have granted a directed verdict in their favor. They further challenge several evidentiary rulings. Finding no merit to the appeal, we affirm.

Procedural History and Facts

**{¶2}** In April of 2005, Linda and Douglas Hyams took their son, Jared, who was nine years old at the time, to the Cleveland Clinic after Jared had developed an unexplained limp and unsteady gait. Jared was evaluated by pediatric neurologist Neil Friedman, who thought that Jared presented with signs of a "conversion disorder." A conversion disorder is "a neuropsychiatric condition and that the symptom or deficit cannot after appropriate investigation be fully explained by a general medical condition." Swaiman, Ashwal, and Ferriero, *Swaiman's Pediatric Neurology: Principles and Practice* (4th Ed.2007). It is a psychological condition that is believed to be caused by some traumatic experience or other difficulty in the person's life.

{¶3} Following outpatient physical therapy, Dr. Friedman ultimately referred Jared to the day hospital program at the Cleveland Clinic Children's Hospital for Rehabilitation ("day hospital") for treatment of conversion disorder and inability to walk. At the day hospital, Dr. Wechsler, a pediatric rehabilitation specialist, oversaw Jared's treatment.

{¶4} Jared's day hospital program included physical and occupational therapy daily, multiple counseling sessions with a clinical social worker or psychologist, and attendance at school and social interaction programs. According to Dr. Wechsler's discharge summary, any efforts to "normalize [Jared's] left foot posture" were abandoned, however, when "the factitious nature of Jared's ambulatory problems became apparent." The day hospital staff was committed to enforcing a consistent behavioral plan, such that, according to Dr. Wechsler, "Jared is beginning to recognize that his behaviors have consequences." Jared's behavior plan at the day hospital included certain reinforcement measures, such as "[i]f he falls during walking he owes 5 sit ups per fall; [i]f he touches the wall/chair/person while walking he owes 5 push ups."

{¶5} Jared was in the day hospital program from May 3, 2005 until May 31, 2005. Upon his discharge, staff members of the day hospital program visited Jared's school for his school re-entry meeting. Their recommendations focused on the belief that Jared "is seeking attention by manipulating the adults around him and falling into the sick role and enjoying the attention he is receiving from this." Consequently, the school re-entry recommendations included, among others, the following:

Jared should be treated as any other child and should receive the natural consequences of any other child for being tardy to class or uncooperative to perform his work. His gait is currently atypical and no focus should be placed on how he is walking in the school environment. He should not be assisted during walking with any hand holding. * * * It is important to treat him as a healthy young boy and not allow him to manipulate adults.

{¶6} The Hyamses were also instructed to follow the same behavior plan used at the day hospital for Jared, focusing on the importance of not rewarding Jared with attention or help when he failed to walk properly. Likewise, the Hyamses were instructed to specifically withhold privileges from Jared, such as eating at the table with the family, if he did not walk properly.

{¶7} Jared's condition however continued to deteriorate. Finally, while being seen by a psychiatrist unaffiliated with the Cleveland Clinic, a dystonia gene panel was ordered and taken in April 2006. Through this blood test, it was discovered that Jared does not have a conversion disorder, but instead, a rare genetic disorder — dystonia. According to the Dystonia Foundation, dystonia is defined as a movement disorder that causes muscles to contract and spasm involuntarily. The dystonia is what caused Jared's inability to walk and his steady physical deterioration.

{¶8} The Hyamses subsequently filed the underlying medical malpractice suit against the Clinic, Dr. Friedman, and Dr. Wechsler, alleging that Dr. Friedman was negligent by failing to properly diagnose the dystonia and that, assuming Jared even had a

conversion disorder, Dr. Wechsler's treatment plan was a "substandard treatment plan." They alleged that the treatment plan "psychologically traumatized, humiliated, and isolated Jared." According to the Hyamses' medical expert, Dr. Granacher, the behavioral plan for Jared was punitive and not acceptable for a nine-year-old boy. Dr. Granacher further testified that the treatment plan caused "significant psychological injuries" to Jared. Conversely, the Clinic's expert testified that Jared's treatment plan was a reasonable and acceptable approach to the treatment of a conversion disorder. The Clinic's expert maintained that it was not a punitive plan and that Jared did not suffer emotional or psychological injuries as a result of the plan.

{¶9} The case proceeded to trial where the jury ultimately found that Dr. Friedman was not negligent but that Dr. Wechsler was negligent in the following two areas: (1) "negligent in creation and implementation of the behavior plan at the day hospital and into the Hyams[es'] household"; and (2) "negligent in the creation and implementation of the behavior plan into the school reentry recommendation." The jury then awarded Jared $590,000 in past and future non-economic loss, the mother $200,000 in damages, and the father $100,000 in damages. The trial court subsequently reduced the total award to the statutory cap of $500,000.

{¶10} The Clinic appeals, raising the following five assignments of error:

"[I.] The trial court abused its discretion in failing to strike the trial testimony of plaintiffs-appellees' expert Robert Granacher, M.D.

"[II.] The trial court erred in failing to grant defendants-appellants' motion for a directed verdict.

"[III.] The trial court abused its discretion in allowing plaintiffs-appellees to play misleading bits and pieces of videotaped depositions.

"[IV.] The trial court abused its discretion in allowing plaintiffs-appellees to play a videotape of Jared Hyams.

"[V.] The trial court abused its discretion in excluding relevant evidence pertaining to an extramarital affair."

Competency to Testify and Render an Opinion

{¶11} In their first assignment of error, the Clinic argues that the trial court abused its discretion in failing to strike the testimony of Dr. Granacher because he was neither competent to testify under Evid.R. 601(D) nor qualified under Evid.R. 702(A). The Clinic further argues that the trial court should have at least stricken that portion of Dr. Granacher's testimony relating to causation because it was based merely on speculation. We disagree.

*A.    Evid.R. 601(D) and Waiver*

{¶12} The Clinic contends that the Hyamses failed to establish that Dr. Granacher was qualified as an expert witness pursuant to the competency requirements of Evid.R. 601(D). The rule provides that "[e]very person is competent to be a witness *except*:

> * * * A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by a physician or podiatrist, *unless* the person testifying is licensed to practice medicine and

surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school.

(Emphasis added.) Evid.R. 601(D).

{¶13} The purpose of Evid.R. 601(D) is to discourage testimony regarding the proper standard of care by a "professional witness" or a physician who is sequestered in the laboratory and has no firsthand knowledge of the duty of care of patients. *Joyce-Couch v. DeSilva*, 77 Ohio App.3d 278, 292, 602 N.E.2d 286 (12th Dist.1991). The rule seeks to prevent "nonclinicians from testifying about the quality of clinical care." *Id.*, quoting *Price v. Cleveland Clinic Found.*, 33 Ohio App.3d 301, 304, 515 N.E.2d 931 (8th Dist.1986). But Evid.R. 601(D) should not be "applied so narrowly that the right of redress in a medical claim collapses under an undue burden." *Crosswhite v. Desai*, 64 Ohio App.3d 170, 177, 580 N.E.2d 1119 (2d Dist.1989).

{¶14} In reviewing the trial court's decision to deny the Clinic's motion to strike, we afford deference to the trial court's decision and may not reverse the decision unless we find that the trial court abused its discretion. *Ruple v. Midwest Equip. Co.*, 8th Dist. No. 95726, 2011-Ohio-2923, ¶ 5. "As such, in order to have an abuse of discretion, 'the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.'" *Vaught v.*

*Cleveland Clinic Found.*, 98 Ohio St.3d 485, 2003-Ohio-2181, quoting *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 662 N.E.2d 1 (1996), syllabus.

{¶15} The Clinic argues that the Hyamses never asked Dr. Granacher on direct (1) whether he was licensed, and (2) whether he devoted at least one-half of his professional time to the active clinical practice of medicine. According to the Clinic, Dr. Granacher is in the business of being a professional witness — the very type of witness that Evid.R. 601(D) is intended to exclude. Because the Hyamses never elicited direct answers to the dual competency requirements of Evid.R. 601(D), the Clinic argues that the trial court was required to strike Dr. Granacher's testimony.

{¶16} The Clinic, however, never filed a motion in limine on these grounds. Nor did it raise the issue prior to cross-examining Dr. Granacher. Instead, the Clinic thoroughly cross-examined Dr. Granacher and then waited until Dr. Granacher had finished testifying and returned home to Kentucky before raising the issue with the trial court. At that point, the trial court found that the Clinic had waived the issue. We agree.

{¶17} Evid.R. 103(A)(1) requires that a party timely object when allegedly inadmissible evidence is introduced at trial. A timely objection is, typically, one made at the time the error complained of occurred. "The contemporaneous objection rule is a fundamental principle which appellate courts cannot easily disregard." *Mallin v. Mallin*, 44 Ohio App.3d 53, 54, 541 N.E.2d 116 (8th Dist.1988). "The purposes of the contemporaneous objection rule include allowing the questioner to correct his or her

mistake or inadvertence, as well as allowing the trial court to avoid error by taking corrective action." (Citation omitted.) *Williams v. Parker Hannifin Corp.*, 188 Ohio App.3d 715, 2010-Ohio-1719, 936 N.E.2d 972, ¶ 15 (12th Dist.).

{¶18} One's failure to object to the use of evidence when the alleged error could be remedied waives the issue. *Mallin* at 54-55; *State v. Girard*, 9th Dist. No. 02CA0057-M, 2003-Ohio-7178, ¶ 28. Indeed, as this court has previously observed, "[a] timely objection also permits the adverse party to take corrective action which would eliminate any basis for complaint." *Mahone v. Sternweiler*, 8th Dist. No. 52810, 1987 Ohio App. LEXIS 8981 (Oct. 1, 1987).

{¶19} Here, in ruling on the motion to strike, the trial court specifically noted that during Dr. Granacher's direct testimony, the Clinic objected and a sidebar discussion was had between counsel and the court. At that time, however, no objection was made regarding Dr. Granacher's competency to testify as an expert pursuant to Evid.R. 601(D). Nor did the Clinic ever raise the issue before trial out of the presence of the jury. While we recognize that a party is not required to file a motion in limine to raise a specific evidentiary issue during trial, we find the timing of the Clinic's objection in this case to be fatal to its argument on appeal.

{¶20} Notably, the Clinic did not raise any issue regarding Dr. Granacher's competency until *after* Dr. Granacher returned home to Kentucky. Indeed, following the Hyamses' direct examination of Dr. Granacher, the Clinic thoroughly cross-examined him, asking him several questions specific to Dr. Granacher's practice and his

professional opinion. We therefore agree with the trial court that the delay on the part of the Clinic in raising the issue operated as a waiver under the specific facts of this case. *See Coe v. Young*, 145 Ohio App.3d 499, 763 N.E.2d 652 (11th Dist.2001) (concurring opinion) (where cross-examination has been engaged in prior to an objection to the direct testimony, any objection to the direct testimony has been waived), citing *Amie v. Gen. Motors Corp.*, 69 Ohio App.2d 11, 14, 429 N.E.2d 1079 (8th Dist.1980) (a party waives any objection to the introduction of testimony unless the objection is made with reasonable promptness).

**{¶21}** As for the Clinic's repeated emphasis that the Hyamses failed to cure or rehabilitate Dr. Granacher's testimony despite having the opportunity to do so during their case in chief, we find this argument lacks merit. The trial court denied the Clinic's motion to strike Dr. Granacher's testimony, thereby obviating the need for the Hyamses to call Dr. Granacher back to the stand.

**{¶22}** Moreover, contrary to the Clinic's insinuation on appeal that Dr. Granacher simply could not satisfy the dual competency requirements of Evid.R. 601(D), we find that the record reflects otherwise. Dr. Granacher's testimony on both direct and cross-examination detailed his board certification in psychiatry, his 35 years of work in neuropsychiatry, and his current practice, which includes treating patients on a weekly basis. Additionally, the Hyamses filed an affidavit of Dr. Granacher in 2009 that establishes he is licensed to practice medicine and that he devotes at least 50 percent of his professional time to the active clinical practice of psychiatry. Dr. Granacher's

discovery deposition filed with the court also supports the conclusion that he meets the dual competency requirements of Evid.R. 601(D). Given this evidence, and the Clinic's untimely objection, we find that the trial court did not abuse its discretion in denying the Clinic's motion to strike Dr. Granacher's testimony. *See generally Witzmann v. Adam*, 2d Dist. No. 23352, 2011-Ohio-379 (even if plaintiff had not waived the issue of the doctor's competency under Evid.R. 601, appellate court likely would have overruled it based on doctor's testimony of his experience and background).

### B. *Application of* Turner

**{¶23}** The Clinic argues that this court's decision in *Turner v. Cleveland Clinic Found.*, 8th Dist. No. 80949, 2002-Ohio-4790, is dispositive of the appeal and requires us to reverse the trial court's decision. We disagree.

**{¶24}** In *Turner*, the plaintiffs brought a medical malpractice action against the hospital and surgeon, asserting a lack of informed consent claim. The plaintiffs, however, never obtained their own medical expert and sought to rely on the defendant-surgeon for purposes of proving their case. *Id.* at ¶ 11. In their case in chief, the plaintiffs called the surgeon as if on cross-examination but failed to ask him any questions regarding his qualifications or experience. *Id.* The plaintiffs further failed to elicit any testimony from the defendant-surgeon regarding the recognized standard of care about what risks of the surgery should have been disclosed. *Id.* at ¶ 16. Consequently, the trial court granted the hospital's motion for a directed verdict, finding that plaintiffs failed to qualify defendant-surgeon as an expert pursuant to Evid.R. 601(D), and that even

if qualified, plaintiffs failed to elicit any expert testimony from him regarding the standard of care to prove their case. *Id.*

{¶25} On appeal, we affirmed the trial court's granting of the motion for a directed verdict, rejecting plaintiffs' claim that no expert testimony was necessary to prove a claim for lack of informed consent. *Id.* at ¶ 34-36. Because the plaintiffs failed to present any expert medical evidence as to the standard of care and that it was not met — necessary elements to plaintiffs' claim — the defendant hospital was entitled to judgment as a matter of law. *Id.* We further recognized that the plaintiffs had failed to establish that defendant-surgeon was qualified to render expert testimony under Evid.R. 601(D) or 702. *Id.* at ¶ 41, 43.

{¶26} We find the facts of *Turner* completely distinguishable from this case. *Turner* does not address whether a trial court acts within its discretion by denying a motion to strike expert testimony when the movant failed to timely object to such testimony. Nor does *Turner* stand for the proposition that an objection under Evid.R. 601(D) can never be waived. Moreover, unlike the instant case where the record contains evidence of Dr. Granacher satisfying the requirements of Evid.R. 601(D), there was no equivalent evidence in *Turner.* Indeed, the *Turner* court noted that, based on the defendant-surgeon's testimony that he was no longer employed by the Cleveland Clinic Foundation coupled with the lack of any questioning by the plaintiffs' counsel as to his present employment, it was unclear whether the defendant-surgeon was even practicing medicine at the time of trial.

**{¶27}** In upholding the trial court's decision to deny the Clinic's motion to strike, we are not relaxing or ignoring the requirements of Evid.R. 601(D). The application of the rule, however, is not applied in a vacuum. Here, the purpose of Evid.R. 601(D) was served in this case; Dr. Granacher is a practicing clinician, familiar with the standard of care. Further, if the Clinic would have timely raised its objection before cross-examining Dr. Granacher at trial, the Hyamses could have easily remedied any issue. Thus, our holding today reinforces the fundamental principle embodied by the contemporaneous objection rule — a timely objection alerts the questioner to correct his or her mistake or inadvertence, as well as allows the trial court to avoid error by taking corrective action. But the failure to timely object will waive the issue.

C. *Evid.R. 702(B)*

**{¶28}** The Clinic also argues that Dr. Granacher's testimony should have been stricken because he lacked the necessary qualifications to offer an expert opinion under Evid.R. 702(B), contending that Dr. Granacher was not a child psychiatrist, not a pediatric rehabilitation specialist (like Dr. Wechsler), and has not developed a treatment plan for a child with a conversion disorder for 40 years. The record reveals, however, that the Clinic never raised this objection during trial and therefore has waived it. *See* Evid.R. 103(A); *Butler v. Minton*, 6th Dist. No. E-05-061, 2006-Ohio-4800. But even if they had properly preserved the issue, we find that it lacks merit.

**{¶29}** Evid.R. 702(B) provides that a witness may qualify as an expert by reason of his or her specialized knowledge, skill, experience, training, or education. This court has succinctly observed the criteria of Evid.R. 702(B) as follows:

> Neither special education nor certification is necessary to confer expert status upon a witness. To qualify as an expert, the witness need not be the best witness on the subject. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function. Moreover, where the fields of medicine overlap and more than one type of specialist may perform the treatment, a witness may qualify as an expert even though he does not practice the same specialty as the defendant.

*Porter v. Sidor*, 8th Dist. No. 84756, 2005-Ohio-776, ¶ 7.

**{¶30}** Dr. Granacher has spent over 35 years in the practice of medicine, including neuropsychiatry. He is board certified in several fields, including general psychiatry and neuropsychiatry. He is experienced in the diagnosis and treatment of movement disorders seen in psychiatric medicine. He is familiar with both conversion disorders and dystonia, as well as their causes, diagnosis, and treatment. Dr. Granacher devises behavioral treatment plans for his patients as a regular part of his practice. Additionally, Dr. Granacher personally evaluated Jared on two occasions. Based on this evidence, we find that Dr. Granacher qualified as an expert pursuant to Evid.R. 702(B).

### D.    Causation Testimony

**{¶31}** The Clinic lastly argues that the trial court should have at least stricken Dr. Granacher's causation testimony as being speculative. The Clinic contends that Dr. Granacher could not differentiate between the emotional/psychological injuries that Jared allegedly suffered as a result of the Clinic's negligence from his pre-existing and

independent emotional/psychological problems. Based on this failure, the Clinic argues that Dr. Granacher's testimony failed to satisfy the Hyamses' legal burden of establishing proximate cause and that his testimony improperly allowed the jury to speculate as to the extent of Jared's injuries attributable to the Clinic's negligence. We find, however, that this argument lacks merit.

{¶32} Our review of the record reveals that Dr. Granacher testified, to a reasonable degree of medical certainty, that the treatment plan followed for Jared's conversion disorder breached the standard of care and that as a result of Dr. Wechsler's negligence, Jared suffered "significant psychological injuries." Dr. Granacher then specifically identified those injuries, including that Jared experienced "flashbacks" of the day hospital. According to Dr. Granacher, the flashbacks are a marker for [Jared's] psychological damage; "Jared's self-esteem has been damaged by this." He further opined that such trauma experienced by a child in the formative years "changes the brain development in a very negative fashion." He stated that as a result of the negative impact from his treatment, "[Jared's] social development has been changed." He opined that it has been "arrested." He further testified that Jared was extremely nervous when he first examined him— something that Dr. Granacher attributed partly to the fact that Jared was made to feel like he was "lying and making up his illness." Dr. Granacher opined that these injuries are "permanent" because "those memories will persist with him the rest of his life."

**{¶33}** We find no basis by which the trial court should have stricken this testimony. And to the extent that Dr. Granacher could not specifically "quantify" or "put a number on the difference between Jared now and before his involvement with the Cleveland Clinic," we do not find that such testimony undermines Dr. Granacher's causation testimony. As explained by Dr. Granacher, "there are certain things you cannot do that on," such as "pain." And the assessment of such damages as pain and suffering are not intended to be given by an expert; instead, they are "solely for the determination of the trier of fact." *Fantozzi v. Sandusky Cement Prod. Co.*, 64 Ohio St.3d 601, 612, 597 N.E.2d 474 (1992). Indeed, as recognized by the Ohio Supreme Court, "there is no standard by which such pain and suffering may be measured. * * * '[N]o substitute for simple human evaluation has been authoritatively suggested.'" *Id.*, quoting *Flory v. New York Cent. RR. Co.*, 170 Ohio St. 185, 190, 163 N.E.2d 902 (1959).

**{¶34}** The first assignment of error is overruled.

<u>Motion for a Directed Verdict</u>

**{¶35}** In their second assignment of error, the Clinic argues that the trial court erred in denying their motion for a directed verdict because (1) Dr. Granacher's expert testimony should have been stricken as being incompetent under Evid.R. 601(D), and (2) Dr. Granacher's causation testimony was legally insufficient. But having already found that Dr. Granacher's testimony should not have been stricken and that his causation testimony was legally sufficient, we find that this argument lacks merit.

**{¶36}** Applying a de novo standard of review, we find that the trial court properly denied the Clinic's motion for a directed verdict. *See* Civ.R. 50(A)(4). Indeed, the Hyamses presented evidence in support of all three elements of their medical malpractice action — (1) the existence of a standard of care within the medical community; (2) Dr. Wechsler's breach of that standard in failing to provide treatment in conformity with that standard; and (3) proximate cause between the medical negligence and the injury. *See Bruni v. Tatsumi*, 46 Ohio St.2d 127, 130-131, 346 N.E.2d 673 (1976). Therefore, the Clinic was not entitled to judgment as a matter of law, and the trial court properly denied it. *See TLT-Babcock, Inc. v. Serv. Bolt & Nut Co.*, 16 Ohio App.3d 142, 474 N.E.2d 1223 (9th Dist.1984).

**{¶37}** The second assignment of error is overruled.

### Other Evidentiary Rulings

**{¶38}** In their last three assignments of error, the Clinic argues that the trial court abused its discretion in (1) allowing the Hyamses to present only portions of Clinic employees' depositions but not requiring them to present the entire deposition despite the Clinic's request; (2) allowing the Hyamses to play a video of Jared; and (3) prohibiting the Clinic from discussing Douglas Hyams's extramarital affair.

**{¶39}** "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *." Evid.R. 103(A). The trial court is vested with broad discretion in the admission and the exclusion of evidence, and a reviewing court will not reverse a trial court's ruling unless the trial court has

clearly abused its discretion to the prejudice of the complaining party. *Yaeger v. Fairview Gen. Hosp.*, 8th Dist. No. 72361, 1999 Ohio App. LEXIS 904 (Mar. 11, 1999), citing *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881 (1988).

{¶40} Applying the requisite standard of review, we find all three of the Clinic's arguments lack merit.

### A.     *Reading of Depositions*

{¶41} Relying on Civ.R. 32(A)(4), the Clinic argues that the trial court committed reversible error in allowing the Hyamses to present only "bits and pieces of videotaped depositions" of three doctor witnesses — Dr. Cohen, Dr. Abdelsalam, and Dr. Wechsler — all of whom were employees of the Clinic.   The rule provides that "[i]f only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts."   Civ.R. 32(A)(4).

{¶42} The Clinic maintains that the jury never heard the doctors' entire testimonies in proper context, thereby unfairly prejudicing their defense.   But the trial court specifically ruled that the Clinic was free to present the entire deposition as part of its case.   Further, the Clinic fails to point out how they were prejudiced by the manner in which the Hyamses presented the evidence.   Thus, based on the record before us, we cannot say that the trial court's decision, even if erroneous, prejudiced the Clinic to warrant a reversal. *See Yaeger*, *supra*.   Accordingly, the third assignment of error is overruled.

*B.* *Video of Jared*

**{¶43}** The Clinic argues that the trial court abused its discretion in allowing the Hyamses to present a video of Jared taken in May 2006. The Clinic argues that the video was irrelevant to the issues at trial, and therefore should have been excluded under Evid.R. 402. The Clinic further maintains that the Hyamses failed to timely notify the Clinic of their intent to use the video and that the Hyamses never established the authenticity or accuracy of the video as required under Evid.R. 901(A).

**{¶44}** After careful consideration of the parties' arguments and viewing the video outside the presence of the jury, the trial court concluded that the video was relevant and not unfairly prejudicial. We cannot say that the trial court abused its discretion in allowing the video to be played. The record reveals that the Clinic could not have been surprised by the video as it was the party that produced the video to the Hyamses during discovery. The video was relevant because it depicted Jared's condition on May 6, 2006 — shortly before he was diagnosed with dystonia. Finally, Jared's parents, who were present during the taking of the video, authenticated the video on direct examination. Therefore, we find no merit to the argument that the trial court abused its discretion and overrule the fourth assignment of error.

*C.* *Extramarital Affair*

**{¶45}** In their final assignment of error, the Clinic argues that the trial court abused its discretion in prohibiting the Clinic from specifically discussing Douglas Hyams's extramarital affair. The trial court, however, allowed the Clinic to discuss "marital

discord" or "domestic problems" at home. The trial court's ruling fairly allowed the Clinic to get their point across without unfairly sensationalizing the matter. We find no basis to conclude that the trial court abused its discretion or that the Clinic was prejudiced by its ruling.

**{¶46}** The final assignment of error is overruled.

**{¶47}** Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
MARY EILEEN KILBANE, J., CONCUR