[Cite as *LTF 55 Prob. Ltd. v. Charter Oak Fire Ins. Co.*, 2020-Ohio-4294.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

LTF 55 PROPERTIES, LTD., ET AL.,  :

      Plaintiffs-Appellants,  :

                      No. 108956

      v.  :

CHARTER OAK FIRE INSURANCE
CO., ET AL.,  :

      Defendants-Appellees.  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** September 3, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-905321

---

### *Appearances:*

Paul W. Flowers Co., L.P.A., Paul W. Flowers, and Louis
E. Grube; Plevin & Gallucci Co., L.P.A., David R. Grant,
and Frank L. Gallucci, III, *for appellants*.

Gregory and Meyer, P.C., and Michele A. Chapnick, *for
appellee*.

MARY EILEEN KILBANE, J.:

{¶ 1} Plaintiffs-appellants LTF 55 Properties, Ltd. ("LTF") and Garda Arch

Fab, LLC ("Garda") (collectively, "Appellants") appeal the grant of summary

judgment in favor of defendant-appellee Charter Oak Fire Insurance Co. ("Charter Oak"). Appellants also appeal the trial court's ruling that their pending motion to compel discovery was moot after the grant of summary judgment. For the reasons that follow, we reverse the award of summary judgment to Charter Oak and remand for further proceedings.

## I. FACTUAL BACKGROUND

### A. The Parties

{¶ 2} LTF owns property, buildings, and certain contents at 1873 East 55th Street, Cleveland, OH 44103 and 1873 East 55th Street (Rear), Cleveland, OH 44103 (the "Property"). LTF leased the Property to Garda, which operated a business and owned certain contents there. Frank Tombazzi ("Tombazzi") is the co-owner and manager of LTF and co-manager of Garda. LTF also leased a portion of the Property to another tenant, NEO Contractors ("NEO"), whose principal is Brian Petruccielli ("Petruccielli"). NEO is insured by Grange Mutual Casualty Company ("Grange").

{¶ 3} Charter Oak is a corporation that sells insurance policies in Ohio. It is a property-casualty affiliate of Travelers Insurance, but the two are one-in-the-same for the purposes of this appeal. Charter Oak issued Commercial Insurance Policy No. Y-630-4924X027-COF-16 (the "Policy") to Profac, Inc. d.b.a. Merritt Woodwork ("Profac") as a Named Insured, with a policy period of March 1, 2016, to March 1, 2017, subject to various terms and conditions within the Policy. CBIZ Insurance Services ("CBIZ") was the insurance agent or broker that arranged the Charter Oak coverage for Profac.

{¶ 4} Michael Merritt ("Merritt") is Profac's president and CEO. In the fall of 2015, Appellants entered into a Letter of Intent with Profac. The plan was for Merritt to assume management of LTF and Garda and eventually purchase the two companies. Appellants and Profac agreed in the Summer of 2016 that Appellants would both be included on Profac's insurance Policy with Charter Oak. LTF and Garda were included as additional insureds on the Policy sometime before October 2016.[1] However, Profac paid the premiums for the Policy coverage. Tombazzi Dep. 103:3-4.

## B. The Claim

{¶ 5} A fire occurred on the Property on October 19, 2016. The Cleveland Fire Department responded to the fire after being alerted by a fire alarm system. Rembiesa Dep. at exhibit No. 5. The Cleveland Fire Department's report states that the fire started in a vehicle that NEO kept on the Property; NEO's owner had left the truck connected to a snow plow battery that he had been repairing.

{¶ 6} Appellants were told about the fire that same day. They hired Alex N. Sill Company ("Sill"), a public adjuster, to advise them on how to handle the incident. Tombazzi, Appellants' principal, testified that Sill repeatedly instructed Appellants to file an insurance claim with Charter Oak starting around October 24, 2016.

---

[1] There is some discrepancy as to the exact date Appellants were added to the policy and the exact date they knew they were additional insureds. However, it is undisputed that Appellants were included as additional named insureds under the Policy before October 2016. The exact date is not material to this appeal.

{¶ 7} Appellants sent an email to Merritt, Profac's CEO, notifying him of the fire on October 24, 2016, just five days after the fire. Four minutes after receiving the Appellants' email notice, Merritt replied by email, ordering Appellants to do nothing further:

> Please do not talk to anybody — Keith and Nick are on the way down. You are not to contact anyone — this is MY issue is [sic] it is MY insurance. My agent is advised and they will dispatch adjuster.

(Emphasis sic.) R. 16 at exhibit No. 1.

{¶ 8} Appellants waited five days after the incident to email Merritt because they knew Merritt "was going to be upset about it" and because they did not fully realize the extent of the damage. Tombazzi Dep. 102:18-22. Appellants did not notify Charter Oak in October 2016, so that Merritt, whose company had been paying the premiums, could decide how to handle the situation. Tombazzi Dep. 103:7-14.

{¶ 9} NEO's insurance company, Grange, hired EFI Global to investigate the fire. EFI Global documented its investigation, with a report and at least 65 photographs of the truck and the surrounding scene, but those materials are not available for consideration in this appeal.[2] Charter Oak contends that EFI Global or Grange refused to share the investigation file with Charter Oak. However, Scott Rembiesa ("Rembiesa"), the Charter Oak claim professional assigned to Appellants' claim, testified that a Grange representative did offer to provide EFI Global's

---

[2] Discussed in more detail below, Charter Oak objected to the submission of the EFI Global investigation materials. Finding their objection valid, we will not consider the materials in our review. However, it appears to be undisputed that the materials exist.

investigation file to Charter Oak, but that Charter Oak, within his knowledge, never followed up to obtain it. Rembiesa Dep. at 52:19-53:7; 66:18-67:3. Rembiesa also testified that EFI Global materials might have assisted Charter Oak in evaluating Appellants' claim. *Id.* Thus, there is some evidence that EFI Global documented its investigation and that Charter Oak could have obtained those documents and photographs, but chose not to.

{¶ 10} On November 20, 2016, Appellants settled with NEO and its insurer, Grange, for $100,000 for fire damage to Appellants' Property. Appellants believed that NEO's policy limit was $100,000. In exchange, Appellants released all claims against NEO, Petruccielli, and Grange. Appellants did not inform Charter Oak of the settlement and release before it was executed. They also did not notify Charter Oak of their claim in November 2016, believing that the settlement would cover all their damages. *Id.* at 104:13-105:2.

{¶ 11} At some point after the fire, Appellants' business venture with Profac fell apart. Appellants realized that the total amount of the loss exceeded the $100,000 settlement amount around January 2017. However, Appellants did not notify Charter Oak in January 2017 in order to maintain the status quo with Profac until tax issues related to their business divorce were settled. Tombazzi Dep. at 106:6-24. The tax issues were resolved around the end of February or beginning of March 2017. *Id.* at 106:22-24. Following the resolution of the tax issue, Appellants notified Charter Oak of their loss and requested coverage under the Policy on March 23 2017, about five months after the fire.

{¶ 12} After providing notice, Appellants also submitted a document titled "Sworn Statement in Proof of Loss," which claimed $309,867.39 in building damage and $56,109.03 in loss or damage to business personal property for a total claim of $365,976.42. The loss claimed in the Sworn Statement did not include losses covered by the $100,000 settlement amount paid by NEO. Tombazzi Dep. 112:10-12.

{¶ 13} In the five months between the fire in October 2016 and Appellants' notice to Charter Oak in March 2017, NEO and Garda employees had cleaned up the site of the fire at the Property. The NEO truck believed to have caused the fire was removed from the Property along with other items Appellants claimed were damaged in the fire. It is not clear from the record whether the truck is available somewhere for inspection.

{¶ 14} Charter Oak took the sworn testimony of Tombazzi and Merritt before issuing a decision on Appellants' claim. Afterwards, Charter Oak denied the claim on December 20, 2017, citing Appellant's failure to provide timely notice. Appellants' requested reconsideration of their claim. Charter Oak affirmed the denial by letter on March 30, 2018.

C.    The Policy

{¶ 15} Charter Oak attached a copy of the Policy to its summary judgment motion and authenticated it by affidavit. Pursuant to Civ.R. 56(C) and (E), we may properly consider the Policy for summary judgment purposes.

{¶ 16} The Policy contained a provision that required Appellants to provide Charter Oak with "prompt notice" in the event of the loss or damage to covered property. Charter Oak claims Appellants breached this provision, barring any recovery under the Policy.

{¶ 17} The Policy also contained a subrogation provision titled "Transfer of Rights of Recovery Against Others to Us." Charter Oak claimed that Appellants' delayed notice prohibited it from exercising its subrogation rights under the Policy. The section provides, in relevant part:

> If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:
>
> * * *
>
> (b) After a loss under this Coverage Part only if, at time of loss, that party is one of the following:
>
> * * *
>
> (3) Your tenant.
>
> * * *
>
> As required by the loss conditions and additional conditions referenced above, it is your responsibility to provide Charter Oak with prompt notice of the loss and not to impair Charter Oak's subrogation rights.

## II. PROCEDURAL BACKGROUND

{¶ 18} Appellants filed a complaint against Charter Oak, Profac, and CBIZ on October 12, 2018. They raised three causes of action against Charter Oak: (1) breach of contract; (2) bad faith; and (3) declaratory judgment.

{¶ 19} Charter Oak answered the complaint on December 14, 2018, and then moved for summary judgment on January 11, 2019. Charter Oak's motion for summary judgment attached the following: (1) Appellants' complaint, which attached (a) the declarations pages of the Policy, (b) a copy of the change endorsement that added Appellants as additional named insureds to the Policy, and (c) the October 24, 2016 emails between Appellant and Profac instructing Appellants not to contact anyone else about the claim and stating that Profac had informed its insurance agent of the fire; (2) the transcript of the examination under oath of Tombazzi, taken on October 17, 2017; and (3) the affidavit of Rembiesa, which attached (a) copies of Appellants' settlement and release with NEO and its insurer, (b) the $100,000 settlement check from Grange to Appellants, (c) a copy of Grange's declaration page, (d) Appellants' sworn statement in proof of loss dated September 15, 2017, (e) the December 20, 2017 denial of claim letter from Charter Oak to Appellants, (f) the March 30, 2018 letter reaffirming the denial of the claim; and (4) the affidavit of Kenneth Kupec ("Kupec"), Second Vice President of Document Management for Travelers Indemnity Company, which is affiliated with Charter Oak. Kupec's affidavit authenticated and attached the Policy.

{¶ 20} On February 11, 2019, Appellants moved for an extension of 120 days to conduct additional discovery before responding to Charter Oak's summary judgment motion pursuant to Civ.R. 56(F). The trial court granted the requested extension and set a deadline on June 11, 2019, for Appellants to respond to the summary judgment motion.

{¶ 21} In that time, Appellants served Charter Oak with written discovery requests on April 24, 2019. Charter Oak responded to those requests on May 22, 2019, claiming to have provided all nonprivileged or protected records. Appellants deposed Rembiesa on May 30, 2019, which they claim was the first mutually agreeable date. On June 10, 2019, Appellants requested dates to depose three additional Charter Oak employees sometime after their opposition to summary judgment was due.

{¶ 22} Appellants filed a brief in opposition to Charter Oak's motion for summary judgment on June 11, 2019. Appellants' opposition brief attached the following evidence: (1) the affidavit of David R. Grant, lead counsel for Appellants, which attached (a) a November 18, 2016 email from Grange stating that NEO's policy limits were $100,000, (b) a February 4, 2019 email from Grange stating the same, (c) documents regarding EFI Global's investigation of NEO's fire loss claim that was conducted before Appellants settled with NEO; and (2) two reports prepared by the Cleveland Fire Department regarding its investigation of the fire at the Property.

{¶ 23} Charter Oak filed a reply in support of its motion on July 8, 2019, pursuant to an extension granted by the trial court. The reply also included a motion to strike certain exhibits from Appellants' opposition. LTF and Garda moved for leave to file a surreply on July 9, 2019, noting that Charter Oak's reply included a motion to strike and that they were seeking to further respond to alleged errors and misstatements made by Charter Oak regarding the testimony of Rembiesa. The trial court granted Appellants leave to reply to the motion to strike on July 19, 2019. Appellants' surreply in opposition to motion for summary judgment appears on the docket on July 18, 2019.

{¶ 24} On July 16, 2019, more than one month after filing their opposition to summary judgment, Appellants moved to compel discovery against Charter Oak pursuant to Civ.R. 37. Appellants claimed that Charter Oak failed to produce certain requested documents and refused to schedule the depositions of three Charter Oak employees. The depositions requested were of Charter Oak employees who Rembiesa had identified as having knowledge of Charter Oak's investigation, or lack thereof, into Appellants' claim. Appellants claimed the additional depositions were necessary because Rembiesa's deposition revealed that he lacked personal knowledge for much of the information averred in his affidavit submitted in support of Charter Oak's motion for summary judgment.

{¶ 25} Charter Oak did not agree to conduct additional depositions until after the court ruled on its summary judgment motion. In their brief opposing the July 22, 2019 motion to compel, Charter Oak claimed that Appellants were not entitled

to additional discovery beyond the 120 days already granted to Appellants in order to respond to the summary judgment motion.

{¶ 26} On August 2, 2019, the trial court granted Charter Oak's motion for summary judgment, dismissing all claims against Charter Oak and declaring no just cause for delay. The trial court denied the motion to compel as moot on August 5, 2019, based upon its order granting summary judgment. This appeal follows. Appellants have presented two assignments of error for our review:

Assignment of Error No. 1

The trial court erred as a matter of law, and otherwise committed an abuse of discretion, by declaring that Plaintiff-Appellants' motion to compel was moot after summary judgment was granted.

Assignment of Error No. 2

The trial court erred, as a matter of law, by granting summary judgment upon the claim for insurance coverage in favor of Defendant-Appellee, Charter Oak Fire Insurance Company.

III. **LAW AND ANALYSIS**

{¶ 27} We will discuss Appellants' second assignment of error first for ease of discussion.

A. **Summary Judgment**

{¶ 28} Appellants brought three claims against Charter Oak: (1) breach of contract; (2) bad faith; and (3) declaratory judgment. The trial court granted summary judgment to Charter Oak on each of Appellants' claims. We will review each claim in turn.

## 1.   Standard of Review

{¶ 29} "Summary judgment is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing to try." *Burkes v. Stidham*, 107 Ohio App.3d 363, 370, 668 N.E.2d 982 (8th Dist.1995), citing *Norris v. Ohio Std. Oil Co.*, 70 Ohio St. 2d 1, 433 N.E.2d 615 (1982). "Summary judgment is not appropriate where the facts are subject to reasonable dispute when viewed in a light favorable to the nonmoving party." *Burkes* at 370, citing *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 104, 483 N.E.2d 150 (1985).

{¶ 30} We review summary judgment appeals de novo:

> We review the trial court's decision on summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996 Ohio 336, 671 N.E.2d 241 (1996). In so doing, we use the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The party moving for summary judgment bears the initial burden of apprising the trial court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on an essential element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264 (1996). Once the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact exists. *Id.* To satisfy this burden, the nonmoving party must submit evidentiary materials showing a genuine dispute over material facts. *PNC Bank, N.A. v. Bhandari*, 6th Dist. Lucas No. L-12-1335, 2013-Ohio-2477, ¶ 9.

*Kaplan Trucking Co. v. Grizzly Falls Inc.*, 2017-Ohio-926, 86 N.E.3d 845, ¶ 15 (8th Dist.), quoting *Lillie & Holderman v. Dimora*, 8th Dist. Cuyahoga No. 100989, 2015-Ohio-301, ¶ 9.

{¶ 31} The following elements must be established to support a grant of summary judgment:

The motion for summary judgment may only be granted when the following are established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in its favor. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978); Civ.R. 56(C).

*Kaplan Trucking* at ¶ 16, quoting *Lilli & Holderman* at ¶ 9.

### 2. Evidentiary Materials

{¶ 32} Civ.R. 56(C) governs the materials a court may consider for the purposes of summary judgment. Pursuant to the rule, courts may consider, "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action * * *" when determining whether there is a genuine issue as to any material fact that would entitle the moving party to judgment as a matter of law. Civ.R. 56(C).

{¶ 33} Under Civ.R. 56(E), documents that do not fit within the categories listed in Civ.R. 56(C) may be introduced as evidentiary material for the court's consideration where incorporated by reference in an affidavit. The affidavit must properly authenticate the evidence, which requires the affiant to have personal knowledge "'gained through firsthand observation or experience.'" *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 26, quoting Black's Law Dictionary 875 (7th Ed.1999).

{¶ 34} However, "[f]ailure to move to strike or otherwise object to documentary evidence submitted by a party in support of, or in opposition to, a

motion for summary judgment waives any error in considering that evidence under Civ.R. 56(C)." *Citizens Bank, N.A. v. Richer*, 8th Dist. Cuyahoga No. 107744, 2019-Ohio-2740, ¶ 32, quoting *Stegawski v. Cleveland Anesthesia Group, Inc.*, 37 Ohio App.3d 78, 83, 523 N.E.2d 902 (8th Dist.1987).

{¶ 35} Appellants raised the issue below and in their appeal that portions of Rembiesa's affidavit, submitted in support of Charter Oak's motion for summary judgment, are objectionable because the statements were not made with personal knowledge. Charter Oak also objected to three documents submitted with Appellants' opposition to summary judgment by way of a motion to strike. The trial court did not expressly rule on any of these objections and there is no indication the trial court limited its review to certain materials. Accordingly, we must presume the trial court denied these evidentiary objections. *See Sarrough v. Budzar*, 2015-Ohio-3674, 38 N.E.3d 921, ¶ 42 (8th Dist.), citing *Mayfair Village Condominium Owners Assn. v. Grynko*, 8th Dist. Cuyahoga No. 99264, 2013-Ohio-2100, ¶ 4, fn. 2 ("Although the trial court never ruled on the motion, if a motion is not expressly decided by the trial court when the case has concluded, the motion is presumed to have been denied."), citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58.

{¶ 36} In our de novo review, we will only review the admissibility of the documents to which Charter Oak and Appellants specifically objected. Of those documents, we will only consider those that comply with Civ.R. 56. We will review these evidentiary issues for an abuse of discretion. *See Ruple v. Midwest Equip. Co.*,

8th Dist. Cuyahoga No. 95726, 2011-Ohio-2923, ¶ 5, citing *Abernethy v. Abernethy*, 8th Dist. Cuyahoga No. 81675, 2003-Ohio-1528, ("We review a court's denial of a motion to strike for an abuse of discretion.").  "An abuse of discretion is 'more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Ruple* at ¶ 5, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983) (internal citations omitted).

### *a)   Charter Oak's Evidentiary Objections*

{¶ 37} Charter Oak moved to strike three exhibits attached to Appellants' opposition to summary judgment:  the two emails from Grange representing that NEO's policy limit was $100,000 and materials summarizing EFI Global's investigation of the fire that were attached to Appellants' counsel's affidavit.  The documents were authenticated through an affidavit executed by Appellants' counsel.  Charter Oak first objected to the admissibility of the documents on the grounds that Appellants' counsel lacked personal knowledge of their preparation and, therefore, could not authenticate the documents.  It further argued that emails regarding the policy limits were inadmissible opinions.  Charter Oak did not raise specific objections regarding any other exhibits or documents.

{¶ 38} Appellants responded to the motion to strike, arguing that counsel was able to personally authenticate email messages he received and that none of the exhibits were offered as opinion evidence.  Rather, Appellants asserted the exhibits were offered to demonstrate that (1) Grange represented NEO's policy limit as $100,000 to Appellants and (2) Grange had conducted an investigation before

paying the settlement amount. We are partly persuaded by Charter Oak's arguments and find that the trial court abused its discretion in denying Charter Oak's motion to strike as to the November 18, 2016 email and the EFI Global materials.

{¶ 39} The November 18, 2016 email from Grange and the materials related to EFI Global's investigation attached to Appellants' counsel's affidavit were not properly authenticated under Civ.R. 56(E) for summary judgment purposes. The affidavit of an attorney averring personal knowledge of having received a document "is insufficient to authenticate the document under Civ.R. 56, unless the attorney prepared or executed the document, perceived its preparation or execution with his or her sense, or otherwise has personal knowledge of the document's origin." *Bader v. Ferri*, 3d Dist. Allen No. 1-13-01, 2013-Ohio-3074, citing *Emerson Family Ltd. Partnership*, 9th Dist. Summit No. 26200, 2012-Ohio-5647, ¶ 20-21, citing *Johnston v. Great Lakes Constr. Co.*, 9th Dist. No. 95CA006111, 1996 Ohio App. LEXIS 784, 3 (Feb. 28, 1996) and *Windsor v. Estate of Noldge*, 3rd Dist. Seneca No. 13-96-11, 1996 Ohio App. LEXIS 3629, 2 (Aug. 26, 1996). *See also Doe v. Robinson*, 6th Dist. Lucas No. L-10-1032, 2010-Ohio-5894, ¶ 63 ("The fact that counsel received the document does not authenticate it."); *Thompson v. Hayes*, 10th Dist. Franklin No. 05AP-476, 2006-Ohio-6000, ¶ 113 ("'Having 'received' documents from the State of Ohio in the course of one's employment does not properly authenticate those documents.'").

{¶ 40} Appellants' counsel was not included on the November 18, 2016 email from Grange and cannot authenticate it. The EFI Global documents do not appear

to have been produced in response to discovery requests. Since it appears Appellants' counsel merely received the EFI Global documents, he also lacked personal knowledge sufficient to authenticate those documents. Because Charter Oak objected to the consideration of these documents below and they do not satisfy the requirements of Civ.R. 56, we will not consider these two documents in our review. We may, however, consider the February 4, 2019 email correspondence from the Grange representative properly authenticated by counsel's affidavit because the email was sent to Appellants' counsel.

### b)   Appellants' Evidentiary Objection

{¶ 41} Appellants did not file a motion to strike, but otherwise objected to the affidavit of Rembiesa that Charter Oak submitted in support of its motion for summary judgment. In its opposition brief, Appellants demonstrated that several assertions in Rembiesa's affidavit attached to Charter Oak's motion for summary judgment were not based on his own personal knowledge or were inaccurate. Appellants reiterated their objections two more times, in their surreply in opposition to summary judgment and in their motion to compel.

{¶ 42} The trial court appears to have relied on Rembiesa's affidavit in granting summary judgment. It found that the truck had been disposed of and that Charter Oak had been prevented from adequately investigating the claim because the site had been cleaned before Appellants provided notice. The only evidentiary support for these conclusions are the statements in Rembiesa's affidavit.

{¶ 43} Having compared Rembiesa's affidavit with his subsequent deposition testimony, it is clear that he lacked personal knowledge as to whether the vehicle in which the fire was reported to have occurred was available for Charter Oak to inspect. In addition, Rembiesa's deposition contradicts his affidavit. His affidavit states that Charter Oak could not investigate Appellants' claim due to cleanup activities prior to giving notice, but his deposition testimony makes clear that Charter Oak failed to pursue the opportunity to review the potentially helpful EFI Global materials regarding its investigation. Rembiesa's subsequent deposition testimony plainly shows that those portions of his affidavit do not satisfy the requirements of Civ.R. 56, and the trial court's consideration of Rembiesa's affidavit was an abuse of discretion.

{¶ 44} Finally, we note that even if we consider the inadmissible evidence, as the trial court appeared to do, we still find that Charter Oak is not entitled to summary judgment.

### 3. Summary of the Arguments

{¶ 45} The Policy required Appellants to provide "prompt" notice of any loss or claim. In addition, Appellants were required to do everything necessary to not "impair" defendant's subrogation rights. According to Charter Oak, Appellants' five-month delay in providing notice of the fire breached the notice and subrogation provisions and allowed it to deny coverage in good faith. Charter Oak further argues that the delay prejudiced it because the fire damage had been cleaned up before Charter Oak itself was able to investigate the claim and because Appellants entered

into a full settlement and release with the likely tortfeasor, NEO and NEO's insurer, thus impairing its subrogation rights. Appellants argue that whether they provided reasonable notice or prejudiced Charter Oak involve genuine issues of material fact.

{¶ 46} The trial court granted summary judgment on the basis that Appellants breached the notice provision of the Policy and that the breach caused prejudice to Charter Oak. In its order granting summary judgment, the trial court found that Appellants' delay in providing notice "was unreasonable and deliberate" where they "chose not to make a claim in order to protect their own prospective business deal and to avoid paying some taxes." The trial court held that the delay "was a breach of the prompt notice provision * * *."

{¶ 47} The trial court next determined that the unreasonable delay actually prejudiced Charter Oak because Appellants settled with NEO and its insurer, Grange, and provided a full release from liability. The court reasoned that there was some evidence that the settlement was below NEO's policy limits and that the fire damage had been cleaned up, which prevented Charter Oak from assessing the claim and exercising its subrogation rights against NEO or any other possible tortfeasors.

{¶ 48} As Charter Oak has not argued that Appellants otherwise breached the subrogation provision in its briefs, we will only consider whether Appellants' notice breached the notice and subrogation provisions of the Policy. *See State ex rel. Dunlap v. Sarko*, 135 Ohio St.3d 171, 2013-Ohio-67, 985 N.E.2d 450, ¶ 3 ("We will not address the propositions and claims for which relator does not present any argument."); *State v. Kirk*, 8th Dist. Cuyahoga No. 108136, 2019-Ohio-4890, ¶ 43,

citing App.R. 16(A)(7) (declining to consider argument only raised in the heading section).

{¶ 49} Charter Oak's initial burden on summary judgment is to demonstrate the absence of a genuine issue of material fact. The information Charter Oak directs us to does the opposite. Although many underlying facts appear to be undisputed, Charter Oak has not directed us to anything in the record or case law that allows us to find, as a matter of law, that Appellants' notice was unreasonable or that Appellants' action or inaction prejudiced Charter Oak.

{¶ 50} Based on our determinations regarding Appellants' breach of contract claim, we also find that the trial court erred in granting summary judgment on Appellants' bad faith and declaratory judgment actions. Accordingly, we must reverse the ruling of the trial court.

### 4. Breach of Contract

{¶ 51} Provisions requiring prompt notice of a claim or occurrence are generally considered valid. *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, ¶ 30. The Ohio Supreme Court has explained the general reasons underlying notice provisions in insurance policies:

> Notice provisions in insurance contracts serve many purposes. Notice provisions allow the insurer to become aware of occurrences early enough that it can have a meaningful opportunity to investigate. *Ruby v. Midwestern Indemn. Co.*, 40 Ohio St. 3d 159, 161, 532 N.E.2d 730, 732 (1988). In addition, it provides the insurer the ability to determine whether the allegations state a claim that is covered by the policy. *See In re Texas E. Transm. Corp. PCB Contamination Ins. Coverage Litigation* (E.D.Pa.1992), 870 F. Supp. 1293. It allows the insurer to step in and control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible

subrogation claims. *See Am. Ins. Co. v. Fairchild Industries, Inc.* (E.D.N.Y.1994), 852 F. Supp. 1173, 1179. Further, it allows insurers to make timely investigations of occurrences in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims.

*Ormet Primary Aluminum Corp. v. Employers Ins. of Wassau*, 88 Ohio St.3d 292, 302-303, 2000-Ohio-330, 725 N.E.2d 646.

{¶ 52} In late-notice cases, we must engage in a two-step analysis to determine whether the late notice bars recovery. *Ferrando* at ¶ 89. First, we must determine whether the insured breached the notice provision by failing to provide prompt notice. *Id.* Where, as here, a policy requires prompt notice, the insurer is entitled to notice "'within a reasonable time in light of all the surrounding facts and circumstances.'" *Ferrando* at ¶ 90, quoting *Ruby*, syllabus.

{¶ 53} Second, if we find a breach of the notice provision, we must determine whether the breach prejudiced the insurer so that coverage must be forfeited. *Ferrando* at ¶ 89. "Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut." *Ferrando* at ¶ 90.

{¶ 54} We engage in the same two-step analysis to determine whether an insured's breach of a subrogation provision bars recovery under a policy. *Ferrando*, 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, at ¶ 91. First, we consider whether the subrogation provision was breached. *Id.* Second, we consider whether the breach was prejudicial to the insurer. *Id.* A breach gives rise to a presumption of prejudice that the insured must rebut. *Id.* In either case, if the provision at issue

was not actually breached, it is not necessary to engage in a prejudice analysis. *Id.* at ¶ 100.

{¶ 55} We first find a genuine issue of material fact as to whether Appellants complied with the prompt notice provision by giving notice "within a reasonable time 'in light of all the surrounding facts and circumstances.'" *Ferrando* at ¶ 92, quoting *Ruby*, syllabus. We also find genuine issues of material fact regarding whether Appellants breached the subrogation provision. Further, even if we assume Appellants breached one or both provisions, factual issues exist as to whether Appellants prejudiced Charter Oak.

### a)  The Prompt Notice Provision

{¶ 56} Charter Oak argues that Appellants' five-month delay in notifying Charter Oak of the claim was unreasonable as a matter of law because the delay was allegedly deliberate and based solely on Appellants' desire for self-preservation, avoiding taxes, and salvaging their failed business deal with Profac. Appellants argue that the reasonableness of the five-month delay requires a factual determination not appropriate for summary judgment. The trial court agreed with Charter Oak and held:

> The delay in this matter was unreasonable and deliberate. Plaintiffs were informed of the need to file a claim * * * the day after the fire. They chose not to make a claim in order to protect their own prospective business deal and to avoid paying some taxes.

{¶ 57} "Under *Ferrando,* a court must consider all the facts and circumstances surrounding the notice to determine whether the insurance company received it within a reasonable time." *Thomas v. Nationwide Mut. Ins. Co.*, 177 Ohio

App.3d 502, 2008-Ohio-3662, 895 N.E.2d 217, ¶ 87 (8th Dist.).  Under the summary judgment standard, Charter Oak must identify the basis of its motion and identify portions of the record that demonstrate the absence of a genuine issue of material fact.

{¶ 58} We find that whether Appellants' notice to Charter Oak was reasonable under all the circumstances is a factual determination that cannot be determined on summary judgment.  That the circumstances of Appellants' notice appear to be undisputed does not mean that the reasonableness of their notice can be determined as a matter of law.

{¶ 59} To attempt to demonstrate the absence of a genuine issue of material fact as to the reasonableness of Appellants' notice, Charter Oak has primarily focused on Tombazzi's testimony that Appellants waited to notify Charter Oak, in part, because they wanted to keep peace with Profac during their business divorce. Charter Oak argues that the reason for Appellants' delayed notice renders the notice unreasonable as a matter of law, but has not identified any legal authority that allows us to determine the reasonableness of Appellants' notice as a matter of law. Accordingly, we find that the trial court erred in granting summary judgment based on a breach of the notice provision.

{¶ 60} Whether it was reasonable for Appellants to delay notice until March 2017 is a material issue of fact for a jury to determine after considering all the circumstances, including that Appellants, at some point, thought Merritt was properly handling the claim and had submitted the requisite notice.  A mere four

minutes after Appellants notified Merritt of the fire, Merritt instructed them to "not talk to anybody" and to "not to contact anyone."  R. 16 at exhibit No. 1.  He claimed, "this is MY issue" and "it is MY insurance."  *Id.* (emphasis sic.)  In addition, Merritt told Appellants, "My agent is advised and they will dispatch adjuster."  *Id.* Accordingly, we find a genuine issue of material fact as to whether Appellants' notice was reasonable to the extent they waited to notify Charter Oak to attempt to preserve a business relationship with Profac even after realizing that Merritt had not informed Charter Oak itself of the claim.

{¶ 61} Charter Oak relies on many cases in support of its argument, but none demonstrate the absence of a material fact as to whether Appellants' notice was reasonable.  Charter Oak first contends that "Ohio courts have repeatedly rejected the notion that delays predicated on expediency or self-interest are somehow acceptable or "reasonable" and that Appellants' notice in March 2017, was therefore unreasonable because they delayed notice to preserve a business relationship with Profac.  Charter Oak directs us to four cases that purportedly support its argument that delays predicated on expediency or self-interest are per se unreasonable:  *Am. Emps. Ins. Co. v. Metro Regional Transit Auth.*, 12 F.3d 591 (6th Cir.1993) (applying Ohio law); *Gidley v. Cincinnati Ins. Co.*, 9th Dist. Summit No. 20813, 2002-Ohio-1740; *Smith v. Liberty Mut. Ins. Co.*, 9th Dist. Summit No. 21311, 2003-Ohio-3160; *MBE Collection, Inc. v. Westfield Cos., Inc.*, 8th Dist. Cuyahoga No. 79585, 2002-Ohio-1789.  Having reviewed each of these cases, we decline to read them as broadly as Charter Oak urges us to.

{¶ 62} The cases Charter Oak cited in support of its first argument involved notice provisions similar to the one here, but that is where the similarity ends. In *Am. Emps. Ins. Co.*, the issue was whether the insurance company had a duty to defend the insured in a wrongful death case where the insured waited two years after the accident to notify the insurer. *Id.* at 592. The court held the two-year delay was unreasonable where the insured never argued the delay was reasonable, "never attempted to justify its extraordinary delay," and tacitly conceded that the delay was unreasonable. *Id.* at 598. That certainly is not the case here. Appellants do claim the five-month delay was reasonable and there is evidence in the record to support that conclusion. Specifically, the record reflects that Merritt, Appellants' potential business partner and co-insured under the Policy, ordered Appellants not to report the incident, and told Appellants that he would handle the claim and that he had already notified his insurance agent.

{¶ 63} *Gidley* and *Smith* are likewise not analogous to the circumstances of the case before us. In *Gidley*, the policy imposed a duty to promptly notify the insurer prior to settling with a tortfeasor if the insured intended to seek underinsured motorist coverage. *Gidley* at *10. The insured failed to give notice of the accident until approximately four years after it occurred and two years after she settled with the tortfeasor. *Id.* at *11. The reason she gave for the delay was that she could not have filed a claim until after the Ohio Supreme Court decided *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St. 3d 660, 710 N.E.2d 1116 (1999). The *Scott-Pontzer* case allowed employees and family members to recover

underinsured motorist coverage under commercial liability policies. *Id.* at *12. Still, the insured did not provide notice until one year after the *Scott-Pontzer* decision. *Id.* The court affirmed summary judgment for the insurance company, narrowly holding: "We conclude that the notice given by Appellant was unreasonably delayed, since awaiting a favorable supreme court decision is not a reasonable excuse for a four-year delay in filing a claim." *Id.* Appellants did not delay notice for the same reason as in *Gidley*, so we cannot rely on *Gidley* to declare Appellants' notice unreasonable as a matter of law.

{¶ 64} In *Smith*, 9th Dist. Summit No. 21311, 2003-Ohio-3160, the insureds were required to provide prompt notice, but waited eight years until after the accident and six years after settling with the tortfeasor to do so. *Smith* at ¶ 61. As in *Gidley*, 9th Dist. Summit No. 20813, 2002-Ohio-1740, which the *Smith* court relied on, the insureds' reason for the delay was that they could not have brought a claim until the *Scott-Pontzer* decision had been decided. *Id.* In light of the holding in *Gidley*, the court concluded that the eight-year delay was unreasonable. *Id.* at ¶ 63. Here, Appellants are not claiming that they were awaiting new case law before providing notice. Accordingly, neither *Gidley* nor *Smith* render Appellants' notice unreasonable as a matter of law.

{¶ 65} Charter Oak also directs us to our decision in *MBE Collection, Inc. v. Westfield Cos., Inc.*, 8th Dist. Cuyahoga No. 79585, 2002-Ohio-1789. Charter Oak claims that it cannot be responsible for Appellants' claimed loss where Appellants failed to notify Charter Oak despite knowledge that its claim was likely covered

under the policy. Relying on *MBE Collection*, Charter Oak contends Appellants "chose to deliberately defy their contract with Charter Oak all in the name of self-preservation" and that we must therefore conclude the five-month delay in notice to be unreasonable as a matter of law.

{¶ 66} In *MBE Collection*, the insured received a cease and desist letter dated June 22, 1998, and was named defendant in a lawsuit for copyright infringement and unfair competition on July 30, 1998. *MBE* at ¶ 36. The case proceeded through December 1998, when the parties settled. *Id.* The insured still did not provide notice until July 1999. *Id.* The insured believed her insurance covered the lawsuit, but simply failed to provide notice until seven months after settling the claim against her. *Id.* at ¶ 37. Unlike here, the insured in *MBE Collection* apparently did not advance any justification for the seven-month delay. Although Charter Oak believes Appellants' justification for not providing notice for five months renders the notice unreasonable, a reasonable mind considering all the circumstances could come to the opposite conclusion.

{¶ 67} Charter Oak also overlooks that each of the foregoing cases involved a delay much greater than five months. *Am. Emps. Ins. Co.*, 12 F.3d 591 (6th Cir.1993), involved a two-year delay. *Id.* at 592. *Gidley* involved a delay of four years. *Gidley* at *11. *Smith* involved an eight-year delay. *Smith* at ¶ 61. MBE Collection involved a delay over one year after receiving notice of a potential claim and seven months after settling the claim. *MBE Collection* at ¶ 36. Thus, they

provide no basis for us to find as a matter of law that a five-month delay was unreasonable.

{¶ 68} Charter Oak also asks us to conflate the first *Ferrando* inquiry with the second. That is, it asks us to find that Appellants' notice was unreasonable as a matter of law because Charter Oak was allegedly prejudiced by the delay. Such a holding would violate the analysis set forth in *Ferrando*. *Ferrando*, 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927 at ¶ 100 ("[T]he reasonableness inquiry and the prejudice inquiry are separate and distinct."). In support, Charter Oak directs us to a Sixth Circuit case that applied Michigan law, *Steelcase, Inc. v. Am. Motorists Ins. Co.*, 6th Cir. No. 89-1344, 1990 U.S. App. LEXIS 11310 (July 3, 1990). Charter Oak claims *Steelcase* is analogous to the instant case and demonstrates that there are no fact issues here. We disagree.

{¶ 69} In *Steelcase*, the Sixth Circuit affirmed the grant of summary judgment to the defendant insurance companies where the insured failed to give timely notice. The policy provision required the insured to provide notice "as soon as practicable," but the court did not consider whether notice two years after the loss was reasonable. Rather, it only considered whether the delay caused prejudice. *Steelcase* at *5-6. Once again, Ohio's two-step analysis requires us to first determine whether Appellants' delay in providing notice was unreasonable. In addition, *Steelcase* involved a two-year delay. *Id.* at 3.

{¶ 70} Similarly, the court in *Downing v. Rockford Dist. Mut. Tornado Ins. Co.*, 112 Ill.App.2d 340, 250 N.E.2d 827 (1969), cited by Charter Oak, did not apply

the *Ferrando* analysis to which we must adhere. Under *Ferrando*, Ohio courts apply a particular standard where prompt notice is required: whether the notice was reasonable under all the circumstances. *Downing* neither applied nor considered that standard and therefore is not applicable to our analysis.

{¶ 71} Charter Oak also cites to *Triple Invest. Group, LLC v. Hartford Steam Boiler Insp. & Ins. Co.*, 71 F. Supp.3d 733 (E.D.Mich.2014), another out-of-state case, to attempt to argue that Appellants' notice was unreasonable because it arrived five months after the fire had occurred and the Property had been altered during the interim. *Triple Invest. Group* held that there was no question of fact as to whether the insured breached the prompt notice provision by notifying the insurer 30 days after the loss. *Triple Invest. Group* at 741, citing *ABO Petroleum, Inc. v. Colony Ins. Co.*, E.D.Mich. No. 04-CV-72090-DT, 2005 U.S. Dist. LEXIS 44352 (Apr. 19, 2005). Neither *Triple Invest. Group* nor *ABO Petroleum* held that a 30-day delay was per se unreasonable in all instances or should be presumed prejudicial and the alleged justification for the delay in those cases is not analogous here.

{¶ 72} Moreover, both cases applied Michigan law and it is clear that Ohio considers reasonable notice to primarily to be an issue of fact for the jury. *Ormet* at 299; *Ferrando,* 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927 at ¶ 99. *See also Kaplan Trucking Co. v. Grizzly Falls Inc.*, 2017-Ohio-926, 86 N.E.3d 845, ¶ 42-43 (8th Dist.) (finding issue of fact as to "the scope of the agency relationship between the parties, required to determine the sufficiency of the notice"); *Thomas v. Nationwide Mut. Ins. Co.*, 177 Ohio App.3d 502, 2008-Ohio-3662, 895 N.E.2d

217, ¶ 102-103 (8th Dist.) (directed verdict was improper where, based on the evidence, reasonable minds could have reached different conclusions regarding whether notice was "prompt"). In *Ferrando*, Ohio's leading case on this issue, the Ohio Supreme Court declined to create a rule that a particular delay was unreasonable and instead held that notice given three and a half years after the accident "was not so late to be unreasonable as a matter of law." *Ferrando* at ¶ 6, 93. We must also conclude that Appellants' five-month delay is not so late to be unreasonable as a matter of law.

{¶ 73} Charter Oak also relies on two Ohio cases that predate *Ferrando*, *Ormet Primary Aluminum Corp. v. Emps. Ins. of Wausau*, 88 Ohio St.3d 292, 2000-Ohio-330, 725 N.E.2d 646 and *Ruby v. Midwestern Indemn. Co.*, 40 Ohio St.3d 159, 532 N.E.2d 730 (1988). Although the insurers prevailed in both of those cases, neither changes our conclusion here.

{¶ 74} The policy in *Ormet* required the insured to provide notice "as soon as practicable," which the court determined was synonymous with prompt notice. *Ormet* at 303. The court concluded that the insured's notice, which came 16 years after knowledge of the claim, was unreasonably late as a matter of law and affirmed summary judgment for the insurer. *Id.* at 305. *Ormet* acknowledged that reasonable notice is usually an issue of fact for the jury, but narrowly held that it could be determined as a matter of law if the delay was significant and unexcused. *Ormet* at 299. The facts and circumstances in *Ormet* do not render Appellants' delay unreasonable as a matter of law.

{¶ 75} Evidence in *Ormet* established that the insured was aware of the potential claim related to an environmental contamination, yet waited 16 years to provide notice. *Ormet* at 302. The insured's insurance broker also advised it to make a claim. The court rejected the insured's justification for the delay that it was not aware that government regulatory action would be taken against it because the policy required notice of an occurrence and the insured's argument only related to notice of a claim. *Id.*

{¶ 76} First and foremost, Appellants did not wait 16 years to provide notice, as in *Ormet.* They waited five months. Further, Appellants are not advancing the same justification for the 16-year delay that was rejected in *Ormet.* Rather, Appellants argue that they did not provide notice to Charter Oak until March 2017, because Profac told Appellants that it would handle the claim itself, instructed Appellants not to make a claim, and told Appellants that it had notified its insurance agent of the loss in October 2016. In addition, Appellants claim they were not aware until January 2017 that their losses from the fire exceeded the amount of the settlement with NEO. Thus, *Ormet*, which dealt with a 16-year delay, does not render Appellants' notice unreasonable as a matter of law.

{¶ 77} In *Ruby*, the insured was to provide prompt notice of an accident to protect the insurer's subrogation rights. *Ruby* at 161. The insured delayed notice until 11 months after the accident. *Id.* The court held: "We need not decide whether an eleven-month delay is so unreasonable that prejudice should be presumed, as there is ample evidence that Midwestern was in fact prejudiced by the delay." *Id.*

*Ruby* was decided before *Ferrando* established the two-step analysis for late-notice claims and skipped over the first determination *Ferrando* requires — whether notice was unreasonable. *See Ferrando,* 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927 at ¶ 88 ("We also disapprove of any reasoning within *Bogan, Ruby, and McDonald* that is inconsistent with our holding."). The conclusion that an 11-month delay caused prejudice in *Ruby* does not demand that we find Appellants' lesser 5-month delay to be unreasonable as a matter of law.

{¶ 78} Finally, we will briefly address Charter Oak's argument that Profac's notice to its insurance agent, CBIZ, in October 2016, did not constitute notice to Charter Oak, as required under the Policy. In making this argument, Charter Oak conclusively states that CBIZ was not Charter Oak's disclosed or apparent agent for purposes of notice of loss and therefore could not satisfy the Policy's requirement that Charter Oak itself be notified of the claim.

{¶ 79} We first note that CBIZ's agency status has no impact on what we have already determined, which is that reasonable minds might conclude that Appellants' notice was reasonable under the circumstances regardless of whether CBIZ was an agent who could accept notice on Charter Oak's behalf. Even so, agency status at the time of notice can also be an issue of fact that precludes summary judgment. *Kaplan Trucking Co. v. Grizzly Falls Inc.*, 2017-Ohio-926, 86 N.E.3d 845, ¶ 42-43 (8th Dist.). *See also Thomas v. Nationwide Mut. Ins. Co.*, 177 Ohio App. 3d 502, 519, 2008-Ohio-3662, 895 N.E.2d 217 (8th Dist.), quoting *Helman v. Hartford Fire Ins. Co.*, 105 Ohio App.3d 617, 623, 664 N.E.2d 991 (9th Dist.1995), citing *Hartford Cas.*

*Ins. Co. v. Easley*, 90 Ohio App.3d 525, 531, 630 N.E.2d 6 (10th Dist.1993), ("'As a general rule, if an insurance agent acting with apparent authority receives proper notice of a claim * * *, the notice is considered to have been received by the insurance company.'").

{¶ 80} Regardless of CBIZ's potential agency status, we find a genuine issue of material fact regarding whether Appellants' notice was reasonable under all the circumstances. Accordingly, we must conclude that the trial court erred in granting summary judgment based on its factual determination that Appellants breached the notice provision.

### b) The Subrogation Provision

{¶ 81} Charter Oak also appears to argue that Appellants' actions between the fire in October 2016 and providing notice in March 2017, including failing to inform Charter Oak of its settlement and release with NEO's insurer and allowing the Property to be cleaned before Charter Oak had a chance to conduct its own investigation, also bars Appellants' recovery as a matter of law. Charter Oak argues that Appellants failed to "do everything necessary to secure [Charter Oak's] rights and must do nothing after loss to impair them," as required in the Policy. Appellants counter that they were permitted to execute a settlement and release with its tenant, NEO, and NEO's insurer, Garda, and that the cleanup did not impair Charter Oak's subrogation rights.

{¶ 82} The subrogation provision in the Policy states:

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those

rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

* * *

After a loss under this Coverage Part only if, at time of loss, that party is one of the following:

* * *

Your tenant.

{¶ 83} When interpreting an insurance contract, the Supreme Court of Ohio has explained:

> "An insurance policy is a contract whose interpretation is a matter of law." *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6. "[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined." *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982), citing *Dealers Dairy Prods. Co. v. Royal Ins. Co.*, 170 Ohio St. 336, 164 N.E.2d 745 (1960), paragraph one of the syllabus.
>
> * * *
>
> Furthermore, "[i]f provisions are susceptible of more than one interpretation, they 'will be construed strictly against the insurer and liberally in favor of the insured.'" *Sharonville* at ¶ 6, quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus.

*Sauer v. Crews*, 140 Ohio St.3d 314, 2014-Ohio-3655, 18 N.E.3d 410, ¶ 10-11.

{¶ 84} We first consider whether Appellants breached the Policy by releasing NEO and Grange and find they did not. We find no ambiguity in the subrogation provision regarding Appellants' ability to waive its rights against its tenant, NEO.

Charter Oak argues that Appellants' release of NEO and Grange breached the subrogation provision, but the Policy permitted Appellants to release NEO from liability.

{¶ 85} Also, the release of Grange, NEO's insurer, could not have impaired Charter Oak's subrogation rights because Appellant could not have sued Grange itself for the claimed loss. As Appellants point out, there is no indication that Grange caused the fire and Charter Oak has not directed us to anything in the record to support that it would have had subrogation rights against Grange directly.

{¶ 86} We next consider whether Appellants impaired Charter Oak's contractual subrogation rights against other third parties, such as the truck manufacturer, by allowing the truck to be disposed and the Property cleaned before Charter Oak itself had a chance to investigate the damage and determine the cause of the fire.

{¶ 87} Having reviewed the record, we cannot conclude as a matter of law that Charter Oak's subrogation rights were impaired against potential tortfeasors other than NEO. The Cleveland Fire Department report attributed the cause of the fire to the tenant's working on his truck battery and plow and gives no indication of another possible cause. The report, therefore, provides some indication that the tenant was the only party against whom Charter Oak could have pursued a subrogation claim, but for the contractual provision allowing for the tenant's release. Rembiesa Dep. at exhibit No. 5.

{¶ 88} Even disregarding the Cleveland Fire Department report, a factual issue exists as to whether the truck was still available somewhere for inspection. If the truck existed elsewhere when Charter Oak received notice in March 2017, Charter Oak could have identified and evaluated potential subrogation claims or discover that none exist. Rembiesa testified that the tenant reported to someone at Charter Oak that the vehicle was removed from the Property and taken elsewhere. Rembiesa Dep. 47:22-48:11. To his knowledge, Charter Oak made no further attempt to locate the truck. *Id.*

{¶ 89} At best, Rembiesa's testimony on this point is inadmissible hearsay that does not establish that the truck could not have been inspected in March 2018. Without evidence that the truck was not available for inspection, there is nothing in the record that allows us to conclude that Charter Oak was deprived of the opportunity to inspect the truck or that its subrogation rights were impaired by Appellants' delayed notice. Accordingly, we find issues of fact as to whether Charter Oak's subrogation rights were impaired and, therefore, whether Appellants breached the subrogation clause.

### c)   *Prejudice*

{¶ 90} Having found genuine issues of material fact as to whether Appellants breached the Policy, summary judgment is not appropriate and we need not consider whether Charter Oak was prejudiced. *Ferrando* at ¶ 100. Even if we could conclude that Appellants breached the Policy, there is a genuine issue of material fact as to whether either alleged breach caused Charter Oak prejudice.

{¶ 91} Charter Oak argues it was prejudiced because it was not notified before the site had been altered and therefore could not conduct its own investigation of the cause of the fire and properly evaluate Appellants' claim. Charter Oak also claims that it could not rely on EFI Global's investigation materials to evaluate Appellants' claim because EFI Global reportedly refused to share its investigation file. Charter Oak relies heavily on Rembiesa's affidavit, but ignores that Rembiesa contradicted his affidavit in his subsequent deposition testimony. Based on the record, Charter Oak's claims of prejudice are disingenuous.

{¶ 92} Charter Oak's position is based on the affidavit of Rembiesa, but his deposition testimony reveals that he did not have personal knowledge regarding whether Charter Oak asked for EFI Global's files. Rembiesa Dep. at 47:9-48:11; 54:12-22. Moreover, he testified that EFI Global indicated to him that it was willing to share information about its investigation and he stated that EFI Global's documents and photos may have been helpful in investigating and evaluating Appellants' claim. Rembiesa Dep. at 52:19-53:7; 66:18-67:3; 148:5-13. The record further indicates that the EFI Global investigation materials, including 65 photos of the truck and surrounding area, were available to Charter Oak, but Charter Oak made no attempt to obtain and review them before denying Appellants' claim.

{¶ 93} Instead of making any effort to review these potentially helpful investigative materials, Charter Oak discredited them without even seeing them. Charter Oak claims EFI Global did not complete a sufficient fire cause and origin report to allow Charter Oak to determine the cause and evaluate Appellants'

damages. However, this conclusion is premature where Charter Oak has not yet reviewed the EFI Global documents. Where Charter Oak simply never followed up to obtain cause and analysis materials available to it, we cannot conclude that Charter Oak's ability to investigate was prejudiced by Appellants' actions. Reasonable minds could conclude that Charter Oak was prejudiced by its own failure to obtain the EFI Global file and not by Appellants' delay in providing notice.

### 5. Bad Faith

{¶ 94} Appellants alleged that Charter Oak denied its claim in bad faith. Charter Oak argued on summary judgment that its denial was based upon Appellants' breaches of the notice and subrogation provisions of the Policy and, therefore, in good faith and reasonably justified. Appellants countered that any delay in notice or postfire cleanup would have only justified a reduction in recovery rather than a complete denial. The trial court's judgment entry regarding summary judgment does not expressly address Appellants' bad faith claim.

{¶ 95} The Ohio Supreme Court has determined that an insurer "fails to exercise good faith in processing a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), paragraph one of the syllabus. Reasonable justification does not exist where an insurer's refusal to pay a claim is arbitrary or capricious. *Hart v. Republic Mut. Ins. Co.*, 152 Ohio St. 185, 188, 87 N.E.2d 347 (1949).

{¶ 96} Having found genuine issues of material fact as to whether Appellants breached the Policy and caused prejudice, we also find that there are genuine issues of material fact regarding whether Charter Oak denied coverage in bad faith. If Appellants did not breach the Policy or cause prejudice, Charter Oak would no longer be able to justify denying their claim. Further, Rembiesa testified that Charter Oak was able to assess some of the claimed damage itself, which suggests that a complete denial may have lacked reasonable justification. Rembiesa Dep. at 124:24-125:12. Moreover, as discussed, there is a genuine issue of material fact regarding whether the EFI Global investigation documents and photographs are available to Charter Oak and whether the investigation materials would allow Charter Oak to fully assess the loss. For those reasons, we find that the trial court erred in granting summary judgment to Charter Oak on Appellants' bad-faith claim.

### 6. Declaratory Judgment

{¶ 97} Appellants also sought declaratory judgment in its complaint against Charter Oak. The trial court's function in granting summary judgment in a declaratory judgment action is to expressly declare the parties' respective rights and obligations. *Haberley v. Nationwide Mut. Fire Ins. Co.*, 142 Ohio App.3d 312, 313-314, 755 N.E.2d 455 (8th Dist.2001). The trial court determined that Appellants were not entitled to recover under the Policy because they had breached the notice provision and the breach resulted in prejudice to Charter Oak. Having found issues of fact regarding whether Appellants breached the Policy and, if so, whether that

breach caused prejudice to Charter Oak, we must reverse the trial court's award of summary judgment to Charter Oak on Appellants' declaratory judgment claim.

{¶ 98} Appellants' second assignment of error is sustained.

### B.    Motion to Compel

{¶ 99} In their first assignment of error, Appellants argue that the trial court erred or abused its discretion by granting summary judgment to Charter Oak without first considering their pending motion to compel.  We will apply an abuse of discretion standard to review whether summary judgment should have been granted when Appellants' discovery motion was pending.  *State ex rel. Dept. of Mental Health Office of Support v. Levine*, 8th Dist. Cuyahoga No. 51708, 1987 Ohio App. LEXIS 6874, *4 (Mar. 19, 1987).  However, "[e]ven when an abuse of discretion results, a judgment preventing further discovery will not be reversed unless the ruling causes substantial prejudice."  *Braswell v. Duncan*, 8th Dist. Cuyahoga No. 72038, 1997 Ohio App. LEXIS 5310, *16 (Nov. 26, 1997), citing *Shaver v. Std. Oil Co.*, 6th Dist. Huron No. H-89-58, 1990 Ohio App. LEXIS 6010 (Oct. 19, 1990).

{¶ 100} We first clarify that only the pendency of the motion to compel is before us.  The merit of the motion is not up for our review as the trial court merely declared it moot.  This opinion should not be construed as a review of the merit of Appellants' motion to compel.  *See Bridge v. Midas Auto Experts*, 8th Dist. Cuyahoga No. 94115, 2010-Ohio-4681, ¶ 12 (refusing to review motion that trial court declared moot); *Canfield v. Columbia Gas Transm., LLC*, 9th Dist. Lorain No. 15CA010838, 2016-Ohio-5662, ¶ 20 (declining to review implied dismissal of

motion to compel where the court reversed the grant of summary judgment); *Schrock Rd. Mkts., Inc. v. Hodco Food Sys., Inc.*, 10th Dist. Franklin No. 00AP-1156, 2001 Ohio App. LEXIS 2848, *11 (June 28, 2001) (ordering motion to compel declared as moot to be revisited by trial court on remand after appellate court reversed trial court's award of summary judgment).

{¶ 101} With that in mind, we consider whether the trial court erred in granting summary judgment while Appellants' motion to compel was pending. Based on the facts before us, we find that the trial court abused its discretion and that the trial court's failure to consider the motion to compel prejudiced Appellants.

{¶ 102} Appellants' complaint was filed on December 14, 2018. Less than one month later, on January 11, 2019, Charter Oak moved for summary judgment. The summary judgment motion largely relied on statements averred in Rembiesa's affidavit. Appellants timely moved for a continuance under Civ.R. 56(F) to complete discovery necessary to oppose summary judgment. The trial court granted Appellants 120 days to do so, but did not impose a discovery cut-off date, and ordered Appellants' opposition due on June 11, 2019.

{¶ 103} After requesting some written discovery, Appellants deposed Rembiesa on May 30, 2019. Rembiesa's deposition revealed that his affidavit was largely based on hearsay from other Charter Oak employees. By letter on June 10, 2019, Appellants requested the production of certain documents not yet produced and dates to depose three employees Rembiesa identified. Charter Oak did not

immediately reply. Appellants filed their opposition to summary judgment on June 11, 2019, in accordance with the trial court's order.

{¶ 104} Appellants contacted Charter Oak on July 9, 2019, this time by email, again seeking the discovery they sought on June 10, 2019. Citing the June 11, 2019 summary judgment deadline, Charter Oak refused to engage in further discovery while the summary judgment motions were pending. Appellants sent another email to Charter Oak on July 10, 2019. Charter Oak replied the next day, again refusing to conduct further discovery.

{¶ 105} Appellants moved to compel discovery from Charter Oak pursuant to Civ.R. 37 on July 16, 2019. The basis for their motion was that Charter Oak refused to schedule additional depositions of Charter Oak employees after it became clear at Rembiesa's deposition that he lacked personal knowledge regarding many aspects of the case and identified employees who did have personal knowledge. In addition, Appellants sought to compel the production of certain documents they claimed had not been produced in response to written discovery requests. According to Appellants, further discovery was not absolutely necessary for them to prevail on summary judgment, but would have allowed them to supplement the record with additional information to assist the trial court in its summary judgment determination.

{¶ 106} Although Appellants should have at least notified the trial court of the discrepancy between Rembiesa's affidavit and deposition immediately, it raised the issue in three separate filings beginning with its opposition on June 11, 2019.

Appellants again highlighted the issue in their motion to compel, filed July 16, 2019, and a third time in their surreply in opposition to summary judgment, filed July 18, 2019. The trial court granted summary judgment on August 2, 2019, and declared Appellants' motion to compel moot on August 5, 2019. It appears that the trial court's judgment entry granting summary judgment heavily relied upon statements made in Rembiesa's affidavit.

{¶ 107} "The Ohio Rules of Civil Procedure provide a right to the 'liberal discovery of information.'" *Allied Debt Collection of Virginia, L.L.C. v. Nautica Entertainment, L.L.C.*, 8th Dist. Cuyahoga No. 107678, 2019-Ohio-4055, ¶ 23, quoting *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 9. This liberal policy applies to depositions upon oral examination and the other discovery methods listed in Civ.R. 26(A). *Allied Debt* at ¶ 23.

{¶ 108} Appellants properly used Civ.R. 56(F) to preserve their right to conduct discovery before the court ruled on summary judgment. *RBS Citizens, N.A. v. Krasnov*, 8th Dist. Cuyahoga No. 100992, 2014-Ohio-4217, ¶ 42. Their motion specifically requested additional time to conduct discovery before responding so they could investigate the statements in Rembiesa's affidavit. Where Appellants already filed a Civ.R. 56(F) motion, their Civ.R. 37 motion to compel should have raised the concern that they were not receiving the discovery that the trial court granted them time to pursue. Thus, by ruling on summary judgment without addressing Appellants' discovery concerns, Appellants' broad discovery rights were prejudiced.

{¶ 109} Although the trial court granted Appellants ample time to conduct discovery before having to respond to Charter Oak's motion, Appellants could not have known Rembiesa's affidavit was unreliable and inaccurate until after they had the opportunity to depose him on May 30, 2019. Deposing the employees Rembiesa identified as having personal knowledge of Charter Oak's claim investigation might have wholly undermined the basis for Charter Oak's motion, which is precisely what Appellants had requested the opportunity to do under Civ.R. 56(F). We acknowledge that this opinion reverses summary judgment without the benefit of any additional discovery, but Appellants may not have had to initiate this appeal if they had been given the opportunity to conduct the limited discovery requested to fully refute Rembiesa's affidavit.

{¶ 110} Charter Oak argues that Appellants' motion to compel was an attempt to indefinitely prolong summary judgment by repeatedly extending discovery. We disagree. The docket does not reflect a discovery deadline and Appellants were granted time to conduct discovery to adequately respond to summary judgment. Appellants discovered that Rembiesa's affidavit was unreliable within the time allotted to it under Civ.R. 56(F). They also notified the trial court, although not immediately, of the discovery problem and its potential impact on summary judgment. In this instance, where Appellants preserved their discovery rights under Civ.R. 56(F), could not have discovered the need for additional discovery until two weeks before their summary judgment opposition was due, and informed the trial court of a discovery dispute, the trial court abused its discretion

and caused prejudice to Appellants by not resolving Appellants' motion to compel before ruling on summary judgment.

{¶ 111} Appellants' first assignment of error is sustained. Given our resolution of Appellants' second assignment of error, in which we reverse the award of summary judgment, and that the trial court declared Appellants' motion to compel moot based on its summary judgment ruling, the motion to compel will still be pending before the trial court on remand. Upon remand, the trial court should resolve Appellants' motion to compel.

{¶ 112} Judgement reversed and remanded.

It is ordered that appellants recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

PATRICIA ANN BLACKMON, P.J., and
RAYMOND C. HEADEN, J., CONCUR